Larry F. SMITH, Appellant,

v.

STATE of Alaska, Appellee.

No. 6069.

Court of Appeals of Alaska.

Oct. 1, 1982.

Edward J. Reasor, P. C., for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Larry Smith appeals from a sentence of six years with three years suspended, which he received for the offense of lewd and lascivious acts toward a child in violation of former AS 11.15.134. On appeal, Smith contends that this sentence is excessive; he argues alternatively that, in denying a request for continuance of his sentencing hearing, the superior court deprived him of his right to be represented by an attorney of his own choice and of his right to present favorable evidence for the purpose of sentencing. We find it unnecessary to reach the issue of excessiveness, because we conclude that Smith was improperly deprived of his right to representation by counsel.

On February 11, 1981, Smith entered a plea of guilty to one count of lewd and lascivious acts toward a child. Sentencing was scheduled for March 27, 1981. However, a series of events resulted in the original sentencing date being changed on four occasions. Proceedings were first rescheduled from March 27 to April 17 at the request of the defense, apparently because Smith was unable to arrange an appointment for a psychiatric evaluation in time to allow preparation of a presentence report. Another date, April 10, was later substituted, based on the motion of Smith's former attorney, Irwin Ravin, who indicated that he was scheduled to be out of town on April 17. Because Smith's psychiatric counselor, Dr. Gilbert, could not be present to testify as a witness for Smith on April 10, Smith's attorney again moved for a new sentencing date, this time requesting that sentencing be continued to April 16, a date when Dr. Gilbert apparently would have been available. The court, however, rescheduled sentencing for April 17 instead of April 16, apparently overlooking the fact that Ravin had earlier indicated he would be out of town on that date. Upon receiving notice that sentencing had been reset to April 17, Ravin obtained a stipulation from the prosecution to postpone sentencing until May 8, 1981.

Smith appeared on May 8, 1981, as scheduled. He was accompanied by Ravin. At the outset, however, Smith indicated that he was not ready to proceed. He told the court that he had discharged Ravin and

hired another attorney, Mr. Edward Reasor. Smith explained that Reasor knew at the time that he was hired that he would be unable to appear to represent Smith on May 8. According to Smith, Reasor wrote to Ravin requesting him to move for an additional continuance to enable Reasor to appear. It was Smith's assertion, however, that Ravin failed to take any action on Reasor's request.

Smith also informed the court that Dr. Gilbert was unable to appear as a witness on that date; Smith told the court that Ravin had been apprised of this fact well in advance of sentencing but had failed to make any effort to obtain an alternative date to allow for Dr. Gilbert's presence. Smith generally expressed dissatisfaction with Ravin's handling of the case, stating that Ravin had twice changed the date of sentencing without Smith's prior knowledge or consent in order to suit his own (Ravin's) convenience.

Superior Court Judge James Blair indicated early on in the hearing of May 8 that, because of the number of prior continuances, Smith would under no circumstances be permitted an additional extension to enable his new attorney to appear. Judge Blair told Smith that he could have Mr. Ravin act as his attorney or that he could represent himself.[1] Then, without asking Smith if he wanted to relinquish his right to counsel, Judge Blair began the sentencing hearing. The state called one witness, who testified without cross-examination by Smith. Ravin did not examine the state's witness, nor did he attempt to call any defense witnesses. He explained that Smith had instructed him not to speak. Thereafter, the prosecutor presented his sentencing argument and recommendation to the court. At the conclusion of this presentation, Smith's wife interceded, indicating that she had questions about the propriety of a number of matters argued by the prosecution. Mrs. Smith further stated her view that Dr. Gil-

bert's testimony, which could not be obtained because of the court's reluctance to grant a continuance, would have been essential in assisting her husband to present his side of the sentencing issue. Mrs. Smith reiterated her husband's prior claims that it was Mr. Ravin's handling of the case that precluded sentencing from being held at a time when Dr. Gilbert was available.

At approximately this juncture in the proceedings, after the prosecution had presented its sentencing argument but before Smith had an opportunity to argue, Judge Blair, for the first time, personally asked Smith if he wanted Ravin to argue in his behalf; Smith declined. Judge Blair told Smith that he thought Smith was making a mistake, but he concluded that, "it's up to you."

Both Smith and his wife then made brief statements to the court with respect to sentencing. Thereupon, Judge Blair imposed the six-year sentence, with three years suspended, from which Smith now appeals.

Several additional observations must be made concerning Smith's sentencing hearing. At no time during the sentencing did the prosecution object to a continuance or set forth any reason why the state would be prejudiced by a postponement. The only reason stated by the court in denying a continuance was the fact that prior continuances had been granted. Though present throughout the proceedings, Ravin, Smith's discharged counsel, never denied Smith's assertions that the prior delays in sentencing were caused by him and that he had failed to attempt to obtain a different date for sentencing even though he was aware that Dr. Gilbert could not be present on May 8. Despite the obvious animosity on Smith's part toward Ravin, the court never questioned Smith or Ravin to determine whether there was a reasonable basis for Smith's dismissal of Ravin; nor did the court in-

---

1. In this regard, the court stated:

Well, Mr. Ravin is still on the case as far as the file reflects. If you wish to have him speak on your behalf, he is here and able to do so. If you do not wish to have him speak

on your behalf, then . . . you'll face it on your own. But that's a decision that you make willingly and voluntarily at this stage, 'cause we're not going to continue the sentencing.

quire as to whether Ravin thought that there was a sufficiently serious breakdown in his attorney-client relationship with Smith to preclude him from continuing to act effectively as Smith's legal counsel.

Having reviewed the totality of the sentencing record, we do not think that it can support a conclusion that Smith acted unreasonably or in bad faith in attempting to discharge Ravin as his attorney. Indeed, the superior court made no such finding. Nor does the record lead us to conclude that Smith himself could properly be characterized as having been dilatory with respect to his sentencing date. Smith and his wife both made statements on the record placing the blame for much of the delay in scheduling, as well as for Dr. Gilbert's unavailability to testify, on their former attorney, Ravin. Neither Ravin nor the prosecutor disputed these statements, and they went unquestioned by the court, as well.

In *Ledbetter v. State*, 581 P.2d 1129 (Alaska 1978), the supreme court considered a case substantially similar to this case. There, the defendant had appeared before the district court for trial approximately seven weeks after his arraignment by a magistrate. He requested a continuance, stating that he had not yet had the chance to retain an attorney. The district court denied this motion, finding that the defendant had had sufficient time to retain counsel. Trial was held, and Ledbetter appealed after being convicted.

The supreme court, noting that remarks made by the magistrate at Ledbetter's arraignment might have led him to believe that he would be able to obtain a delay if he did not obtain an attorney by the date of trial, concluded:

> Ledbetter's request for a continuance on July 28, the date of the trial, in order to give him further time to get an attorney, did not demonstrate such a complete lack of diligence ... as to merit a denial of his request for a continuance.

*Ledbetter v. State*, 581 P.2d at 1131 (footnote omitted). We believe that a similar conclusion must be drawn from the record in this case.

After concluding that the defendant's conduct could not be characterized as an abandonment of counsel, the court in *Ledbetter* proceeded to hold that the defendant had been denied his constitutionally guaranteed right to counsel. The court stated:

> It must be remembered that Ledbetter's right to be represented by counsel in this criminal prosecution was of constitutional dimension. A waiver of such a right is not to be lightly inferred. As we stated recently in *O'Dell v. Municipality of Anchorage*, [576 P.2d 104, 108 (Alaska 1978)], in order to find a waiver the record must clearly disclose that the accused 'intelligently, competently, understandingly, and freely waived' the benefits of legal representation.
>
> Such a showing was not made here. The record of proceedings ... 'fails to reflect a clear waiver ... of the right to legal representation.' *O'Dell v. Municipality of Anchorage, supra* at 108.

*Ledbetter v. State*, 581 P.2d at 1131 (footnotes omitted).

■ We think that the supreme court's holding in *Ledbetter* with respect to deprivation of the right to counsel is squarely applicable to this case. Here, Smith never indicated a willingness to waive representation by Edward Reasor, whom he had retained to replace Irwin Ravin. Instead, the court forced Smith to elect between representing himself and having Ravin speak for him.

■ Even assuming that Smith's conduct with respect to the prior continuances of his sentencing could have justified the court in forcing such an election—and we do not think that it could—the record before us still fails to reflect an express, informed waiver by Smith of his right to counsel. Smith was not advised of the benefits of legal representation or of the dangers of self-representation before he proceeded with the sentencing unrepresented by counsel.[2] *O'Dell v. Municipality of Anchorage,*

---

**2.** At one point, after the state had presented its witness and made its sentencing argument,

Judge Blair did ask Smith if he would permit Ravin to speak in his behalf; when Smith re-

576 P.2d at 108; *Gregory v. State,* 550 P.2d 374, 379 (Alaska 1976). Nor does the record disclose any effort by the court to inquire personally of Smith to assure that he understood precisely what rights he was giving up by declining legal representation. *O'Dell,* 576 P.2d at 107; *McCracken v. State,* 518 P.2d 85, 91 (Alaska 1974). *See also* Rule 39(b)(3), Alaska R.Crim.P. Additionally, the court failed to determine on the record whether Smith was even minimally qualified to proceed on his own, without the assistance of an attorney. *McCracken v. State,* 518 P.2d at 91. *See also Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975).[3]

We find the language of the Alaska Supreme Court in *O'Dell v. Municipality of Anchorage,* 576 P.2d at 108, to be appropriate to these circumstances:

> What the record totally fails to demonstrate is that [Smith] appreciated what he was giving up by declining the assistance

of counsel. In short, the record fails to demonstrate a knowing and intelligent waiver by [Smith] of the right to the assistance of counsel.

In the absence of a clear indication that Smith had been intentionally dilatory or that he had acted in bad faith with respect to his sentencing date, and lacking any claim of prejudice by the state, we find that Judge Blair's denial of a continuance and his decision to permit Smith to proceed unrepresented must be deemed clearly erroneous. *Ledbetter v. State,* 581 P.2d at 1131.

The sentence imposed by the superior court is VACATED, and this case is REMANDED for resentencing.

---

plied that he would not, the judge told Smith that he considered this decision unwise:

> THE COURT: I'm telling you you're making a mistake by not allowing it, because this is the time and you have an attorney who can speak on your behalf. And whether you ever get another opportunity is something that is far off in the future, so it's up to you.

Aside from the fact that the court's comment was made toward the end of the sentencing proceedings, we note that it was conclusory in nature and did not seek to actually inform Smith of the ways in which he might benefit from being represented by counsel. It is not insignificant, in this regard, that, at an earlier stage in the proceedings, Mrs. Smith, after having intervened to voice complaints about Ra-

vin's failure to handle Smith's case in an adequate manner, stated:

> MRS. SMITH: What does a person have an attorney for if they do not do—do these things for you?

To this, the court responded:

> THE COURT: Well, I don't know.

3. In fact, at the beginning of the sentencing hearing, the court did not even address Smith personally to inquire whether he wanted to waive representation; instead, Judge Blair simply told Smith that he could choose between having Ravin represent him and representing himself. Sentencing proceedings then went forward, without any express indication by Smith as to whether he intended to relinquish his right to representation.