**Nell GIBBS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7807.**

Court of Appeals of Alaska.

Feb. 17, 1984.

Marcia Vandercook and James Gilmore, Gilmore & Feldman, Anchorage, for appellant.

Frank D. Rothschild, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Nell Gibbs pled no contest and was convicted of manslaughter, a class A felony. AS 11.41.120. There were no presumptive sentences for manslaughter at the time Gibbs caused the death of her victim. The maximum penalty for manslaughter is twenty years. AS 12.55.125(c). Gibbs received a sentence of ten years with five years suspended. She appeals contending that because of her particular circumstances this sentence is excessive. We disagree and affirm.

Nell Gibbs is an alcoholic. On June 3, 1982, after consuming a substantial amount of alcohol, Gibbs left her real estate office. She got into her Chevy Blazer and drove to her home which was only a short distance away. Gibbs was aware that children regularly played in the area where she lived. When she arrived at home, Gibbs remained sitting in her vehicle in a drunken stupor with the engine running. After a few minutes she put the Blazer into reverse, pressed hard on the accelerator, and backed up at a rate of approximately fifteen miles per hour until she smashed into a nearby trailer. A six-year-old child, "Bink" Griffiths, was caught behind the Blazer and crushed into the trailer.

In explaining his sentence, Judge Buckalew said the following:

And just looking at the facts, you've got a talented lawyer, a lawyer can do lots of things without too many facts, but to look at the facts that resulted in this child's death, they're pretty staggering. I mean you get in a heavy vehicle, it's in reverse and you're probably going, from looking at that trailer, you must have been going more than 10–15 miles an hour. There's no indication that the brakes were ever applied, and you've lived there a long time and know that the children are going to be present. And the point of impact was right next to the child's home. Those are awful tough, awful tough facts to deal with, and the evidence is clear to me that you were in no condition to be in that automobile.

. . . .

. . . And I look at this case, and what Mr. Rothschild [said] when he was talking about the winds blowing in various states and different wind blowing in the tundra. This country and this state faces pretty serious problems; national problems. It's a problem in this state. And people in other civilized countries in the Western world, I suspect sometimes wonder what's wrong with Americans because on national holidays we celebrate Independence Day; you know we talk about freedom ringing in these Chugach Mountains and everything else, but a lot of our citizens get on the highway, full of alcohol with a high powered car and they kill people. And you know, it's described as wanton slaughter, reckless mayhem, but these automobiles are a necessity. There's no doubt in anybody's mind that when you're intoxicated and get [into] one of these things with three or four hundred horsepower, that that indeed is a dangerous weapon. It's a terribly dangerous weapon.

. . . [W]hen I look at the so called protection of the public, the reaffirmation of societal norms, and I look at the

facts in this case, and try to fit the particular facts of this case into other cases I've handled, why the conduct is not at the lower end of the spectrum. And the thing that aggravates it is this child was in his own yard. Those are tough—tough facts that I have to consider.

I'm persuaded that I, if I'm going to address the issue, the deterence of others, your personal deterence, the reaffirmation of societal norms, I'm going to have to impose time to serve. You can't get in these automobiles with so much alcohol in your system that you appear to not know what you are [sic], and drive one of these things into a home, cut a child in half. This kind of conduct has to stop. People have got to know that it's dangerous to drive these things when they're intoxicated, and they've got to know that if one of these tragedies happens, that jail is certain. Confinement comes with these facts. And the legislature has addressed the issue again dealing with vehicular homicide, and had this occurred after, I guess January 1, I'd be required to impose a five-year presumptive term; no questions asked, that's the first offense. That's what it is. Five years, and you only get credit for good time, no parole.

■ Unlike a defendant subject to presumptive sentencing, Gibbs is eligible for parole prior to serving the full five years of her unsuspended sentence. While suspended time is not to be disregarded entirely, we focus primarily upon the time to serve in determining whether Gibbs' sentence is excessive. *See Tazruk v. State*, 655 P.2d 788 (Alaska App.1982). We do not feel that five years' imprisonment is excessive under the circumstances of this case.

When we separately consider the suspended time we reach the same conclusion. The record reflects that Gibbs has been an alcoholic for a substantial period of time. Clearly she should not drink and drive.

The suspended sentence will provide a substantial incentive for Gibbs to refrain from combining alcohol and driving after she is released from prison. Under these circumstances the total sentence is not clearly mistaken. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence of the superior court is AFFIRMED.[1]

---

1. Sentences for drunken driving manslaughter are summarized in *Pears v. State*, 672 P.2d 903, 910–12 (Alaska App.1983).