James G. CONNOLLY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2228.

Court of Appeals of Alaska.

July 29, 1988.

Richard L. McVeigh, McVeigh & Melaney, Anchorage, for appellant.

Leonard M. Linton, Jr., Chief Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

James G. Connolly drove his vehicle while he was intoxicated and struck and killed a pedestrian. As a result, he was convicted by a jury of manslaughter, a class A felony, AS 11.41.120(a)(1),[1] and "hit and run" driving, AS 28.35.050(a); AS 28.-35.060(a).[2]

Connolly appeals, raising two issues. Connolly argues that the trial court erred

---

1. Alaska Statute 11.41.120(a)(1) provides:

   *Manslaughter.* (a) A person commits the crime of manslaughter if the person,

   (1) intentionally, knowingly, or recklessly causes the death of another person under cir-cumstances not amounting to murder in the first or second degree.

2. Alaska Statute 28.35.050 requires an operator of a vehicle involved in an accident resulting in the death of a person to stop and remain at the

in sentencing him to seven and one-half years' imprisonment for a class A felony offense in the absence of any aggravating factors. Connolly is a first felony offender. The applicable presumptive term is five years. AS 12.55.125(c)(1). The trial court lacks authority to impose additional time, even if the additional time is suspended. *See McManners v. State*, 650 P.2d 414, 416 (Alaska App.1982). The state concedes that the sentence imposed in this case is illegal, but argues that a legal sentence, carrying out the trial judge's intent, could be fashioned by imposing five years with one year suspended for the manslaughter conviction and an additional two and one-half years suspended for leaving the scene of the accident without rendering aid. Connolly's second argument is that his sentence, if restructured, would be excessive.

## FACTS

Connolly was involved in an accident on December 19, 1986, at approximately 6:22 p.m. He had been drinking, and it is estimated that he had a .20 blood alcohol level at the time of the incident. He was driving east on DeArmoun Road when a bus, proceeding in the opposite direction, stopped to let off passengers. Connolly contends that the bus' headlights temporarily blinded him so that he did not see the victim who emerged from the bus and crossed DeArmoun Road in his path. Connolly struck the victim, knocking her into a ditch.

Connolly, apparently recognizing that he had hit something, stopped his car and got out to investigate. The victim's grandson, in the meantime, had come up to meet her and observed Connolly standing in front of his pickup truck with the right front headlight broken out and damage inflicted to the right front portion of the pickup. Connolly appeared to be picking up pieces of the pickup's grill and fragments of the headlight. The grandson saw a person lying in the ditch. He mentioned this to Connolly, at which point Connolly re-en-

scene of the accident and comply with the provisions of AS 28.35.060.

Alaska Statute 28.35.060 provides:

*Duty of operator to give information and render assistance.* (a) The operator of a vehicle involved in an accident resulting in injury to or death of a person or damage to a vehicle which is driven or attended by a person shall give the operator's name, address, and vehicle license number to the person struck or injured, or the operator or occupant, or the person attending, and the vehicle collided with and shall render to any person injured reasonable assistance, including making of arrangements for attendance upon the person by a physician and transportation, in a manner which will not cause further injury, to a hospital for medical treatment if it is apparent that treatment is desirable. Under no circumstances is the giving of assistance or other compliance with the provisions of this paragraph evidence of the liability of an operator for the accident.

(b) Except as provided in (c) of this section, a person who fails to comply with any of the requirements of this section is, upon conviction, punishable by imprisonment for not more than one year, or by a fine of not more than $500, or by both. This provision does not apply to a person incapacitated by the accident to the extent that the person is physically incapable of complying with the requirement.

(c) A person who fails to comply with the requirement of this section regarding assisting an injured person is, upon conviction, punishable by imprisonment for not more than 10 years, or by a fine of not more than $10,000, or by both. This provision does not apply to a person incapacitated by the accident to the extent that the person is physically incapable of complying with the requirement.

The supreme court has held that though they are separate offenses, AS 28.35.050(a) and AS 28.35.060(a) constitute an interlocking statutory scheme prescribing conduct commonly known as "hit and run" driving.

The duty to stop and remain at the scene of the accident is set forth in AS 28.35.050(a). The declared and obvious purpose of the stopping requirement is to ensure compliance with the mandates of AS 28.35.060(a). The two duties enjoined upon the motorist by this latter section are to identify himself to the injured person and to render to that person all "reasonable assistance" under the circumstances.

*Drahosh v. State*, 442 P.2d 44, 47–48 (Alaska 1968). Violations of AS 28.35.060(a) are punished as provided in subsections (b) and (c) of that statute. When, as here, injury or death results from failure to render aid, the offense is the conceptual equivalent of a class B felony with a ten year maximum penalty. AS 28.35.-060(c). In contrast, violations of AS 28.35.-050(a) are punishable as the equivalent of a class B misdemeanor. *See* AS 28.40.050(a), (b) (renumbered from former AS 28.35.230). *See also Drahosh*, 442 P.2d at 47 n. 10.

tered his vehicle and left the scene. The grandson contacted the police, who responded shortly thereafter. The victim was examined by investigating troopers and a doctor, who was a passerby; the victim was pronounced dead at the scene. In the meantime, Connolly had driven approximately two blocks. He stopped at a residence and was able to call the police. At their request, he waited at the residence until they picked him up.

Connolly was convicted of manslaughter and "hit and run" driving. At the time set for sentencing, the state gave the requisite notice that presumptive sentencing applied. It gave no notice of aggravating factors. The parties stipulated to a mitigating factor—that Connolly's conduct constituting the offense was among the least serious within the definition of the offense. AS 12.55.155(d)(9).

The court concluded that the significant offense was manslaughter and that leaving the scene, although a separate distinct offense, did not contribute to the damage suffered because the victim was already dead. In any event, it appears that aid was immediately summoned. The court expressed concern that Connolly had a substantial alcohol problem that required treatment and that, consequently, a substantial period of suspended time was necessary to ensure his rehabilitation. The court also indicated that some deduction from the five-year presumptive prison sentence should be made to account for the mitigating factor. The court imposed a sentence of seven and one-half years for manslaughter, suspending three and one-half years so that Connolly would actually serve one year less than the presumptive

five-year term. The court indicated that Connolly would be on probation for five years. For failure to stop, the court imposed the maximum ninety-day sentence, but made it concurrent. For failure to render aid and give information, the court reiterated that there were no adverse or negative consequences and therefore imposed a one-year concurrent sentence.

Defense counsel and the prosecutor conferred briefly off the record, and then notified the court that the proposed sentence for manslaughter was illegal because, when suspended time was considered, the total sentence exceeded the presumptive term and no aggravating factors had been found. The court considered the possibility of reaching its target sentence by imposing some consecutive suspended time for the failure to render aid. Connolly did not object to this, pointing out that his primary concern was the four years to serve and not suspended time. Defense counsel was not, however, willing to waive any double jeopardy protection that might accrue to Connolly by virtue of the court previously having articulated a different sentence. Concerned about the double jeopardy implications of refashioning the sentence, the trial court left the sentence intact, and Connolly appeals.

## DISCUSSION

Connolly first argues that his sentence, as imposed, is illegal. We agree. For purposes of deciding this case, we assume that the sentence imposed was illegal because suspended time was imposed in excess of the five-year applicable presumptive term.[3]

---

**3.** We recognize that there is an argument that *McManners* could be distinguished. In *McManners,* the defendant was sentenced for a single offense. Under those circumstances, we held that the applicable presumptive term could not be varied in the absence of aggravating or mitigating factors. *See McManners,* 650 P.2d at 416. In contrast, Connolly was sentenced for three offenses, albeit arising out of the same accident. The supreme court has held that when a defendant is simultaneously sentenced for multiple offenses, a single sentence, which might be inappropriate viewed in isolation, might, nevertheless, be appropriate when viewed as part of a

total sentencing package. *See Waters v. State,* 483 P.2d 199, 201–02 (Alaska 1971). In *State v. Andrews,* 707 P.2d 900, 910 n. 10 (Alaska App. 1985), *aff'd,* 723 P.2d 85 (Alaska 1986), we held that when a person is simultaneously sentenced for two or more crimes, each of which is subject to a presumptive sentence, that person must receive a total sentence at least equal to the most severe presumptive sentence when adjusted to reflect aggravating or mitigating factors, but need not receive consecutive presumptive sentences. Thus, two sentences, viewed in isolation, which would violate presumptive sentencing may, nevertheless, if imposed consecu-

We are, nevertheless, satisfied that the trial court could have adjusted the verbal sentence to carry out its intent, so long as it did so before concluding the sentencing hearing and adjourning. *Sonnier v. State*, 483 P.2d 1003 (Alaska 1971), is not to the contrary. In *Sonnier*, the supreme court held that once a sentence is meaningfully imposed, it cannot be varied in a manner adverse to the defendant without violating the defendant's double jeopardy rights. We are satisfied that the trial court had not "meaningfully imposed" any sentence at the time the parties' concerns about *McManners* were first voiced. In our view, it is reasonable to allow the trial court to impose a sentence and immediately modify it in response to objections or requests for clarification from the parties before concluding that it has "meaningfully imposed" an appropriate sentence. So long as the trial court does not conclude the sentencing hearing, we believe reconsideration of a sentence may be had without violating the principal articulated in *Sonnier*.

In this case, the trial court did not modify the sentence. Consequently, it has now been "meaningfully imposed." The manslaughter sentence, as currently structured, violates *McManners* and must be modified.

■ The parties voiced their concerns about the sentence during the sentencing hearing. Connolly was therefore on notice of the possible illegality of the sentence in the form imposed. The sentencing court made clear on the record its intent to impose a total sentence of seven and one-half years with three and one-half years suspended no matter how it was structured. Under these circumstances, we do not believe that it would violate Connolly's reliance interest to restructure the sentence to limit the manslaughter sentence to five years and one year suspended and impose, in addition, a consecutive sentence of two and one-half years for leaving the scene, in

order to bring the sentence into conformity with *McManners*. *State v. Price*, 715 P.2d 1183, 1186–87 (Alaska App.1986).

■ Connolly next argues that his sentence, if restructured, would be excessive. He points out that he had a favorable presentence report, that the state stipulated that his conduct was among the least serious contemplated within the definition of the offense, AS 12.55.155(d)(9), and that he was considered a good candidate for rehabilitation by both the Department of Corrections and by Dr. Aaron Wolfe of the Langdon Clinic, who conducted an independent psychiatric examination.

Connolly is correct that he has an exemplary record. He served with distinction in the military, was honorably discharged, and has been employed during the bulk of his life. He has no criminal record and, in fact, had no traffic violations prior to the instant offense. It appears that Connolly was laid off from a high-paying job approximately four months before the incident in question and was unable to obtain new employment. His employment difficulties contributed to marital difficulties which resulted in a divorce that became final on the day this incident occurred. A combination of inability to find work and marital problems led Connolly to drink excessively and accounted, at least in part, for his being intoxicated at the time of the incident in question.

■ The state and Connolly stipulated that his conduct was among the least serious contemplated within the definition of the offense. AS 12.55.155(d)(9). In context, this would appear to mean that Connolly's conduct occupied the borderline between manslaughter and negligent homicide. *See, e.g., Braaten v. State*, 705 P.2d 1311, 1325 (Alaska App.1985) (Singleton, J., concurring). Presumptive sentencing is mandatory and is binding on the trial court. *See Kelly v. State*, 663 P.2d 967, 973–75 (Alaska App.1983). Parties may not stipu-

tively, add up to the appropriate presumptive sentence and satisfy the law. Reading *Andrews* and *Waters* together, it is possible that we could construe Connolly's multiple convictions and the trial court's power to impose consecutive

sentences as the conceptual equivalent of a finding of aggravating factors so that the sentence imposed in this case would not be illegal. The parties have not discussed this argument, and we reserve judgment at this time.

late to ignore past convictions in order to avoid presumptive sentencing. *Hartley v. State,* 653 P.2d 1052, 1055–56 (Alaska App. 1982) (parties may not avoid presumptive sentencing by expressly or implicitly ignoring applicable aggravating or mitigating factors). Consequently, the trial court cannot merely accept a stipulation to an aggravating or mitigating factor, but must independently review the record to ensure that there is a factual basis for the proposed aggravator or mitigator.[4]

We stress the necessity of full disclosure to the sentencing court regarding pertinent facts. When there is a *bona fide* dispute between the parties regarding the factual basis for an aggravating or mitigating factor, the court may permit the parties to compromise the dispute regarding that factor and stipulate to its existence or nonexistence. *Kelly* and *Hartley* were not intended to prevent reasonable compromises regarding the facts upon which the presumptive sentencing guidelines depend. Our cases do prohibit the parties from disregarding clearly applicable past convictions or stipulating away aggravating and mitigating factors about which there is no reasonable basis for a dispute. The trial court may and probably should, after appropriate notice, *sua sponte* consider such factors and prior convictions when they are established in the record. *Kelly,* 663 P.2d at 974–75; *Hartley,* 653 P.2d at 1055–56. When, however, the facts are in dispute and reasonable people could differ on the question whether the evidence establishes clearly and convincingly the existence of a factor, the court may accept a stipulation regarding it.

In this case, the record suggests that Connolly was driving with a blood alcohol level approximately twice the level prohibited by statute. On the other hand, construing the record most favorably to Connolly, his vision of the victim may have been obscured by the bus' headlights so that Connolly's intoxication only minimally contributed to the accident. It does not appear that the accident occurred on heavily

travelled streets during a rush hour or in an area in which pedestrians could be expected to exist in large numbers. Under the circumstances, the trial court did not clearly err in accepting the parties' stipulation and finding that the record would support the conclusion that Connolly's conduct was among the least serious contemplated within the definition of the offense of manslaughter. *Cf. Marks v. State,* 496 P.2d 66 (Alaska 1972) (appellate court may not accept state's concession of error without independently evaluating the record to determine whether error exists).

The mere fact that Connolly has established that his conduct was among the least serious within the definition of the offense, however, is not *per se* sufficient to justify a maximum decrease in the presumptive term. *McReynolds v. State,* 739 P.2d 175, 182 n. 5 (Alaska App.1987). The trial court must evaluate the significance of the mitigating factor based on the specific facts of each case and in light of the sentencing criteria established in *State v. Chaney,* 477 P.2d 441 (Alaska 1970). *See Linn v. State,* 658 P.2d 150 (Alaska App. 1983). In other cases involving least serious conduct, we have approved relatively minor adjustments to the applicable presumptive term when such adjustments have been justified by the totality of the circumstances. *See Nell v. State,* 642 P.2d 1361, 1372 (Alaska App.1982); *see also State v. Richards,* 720 P.2d 47, 51 (Alaska App.1986) (Singleton, J., concurring). Our independent evaluation of the record in this case leads us to conclude that the trial court did not err in only reducing the presumptive term by one year of actual incarceration.

We recognize that we must consider suspended time as well as actual incarceration. We assume that if the trial court imposes a restructured sentence on remand, at least two and one-half of the suspended years must be justified by Connolly's leaving the scene. In evaluating this part of the sentence, we note that the trial court did not consider Connolly's actions after the acci-

---

**4.** We see no problem with the court's accepting the stipulation that Connolly's "hit and run" was among the least serious within the definition of those offenses. AS 28.35.050–.060.

dent to have contributed to his victim's death. It appears that help was summoned almost immediately and that a passing doctor examined the victim and pronounced her dead. Connolly, himself, contacted the authorities within twenty minutes of the accident and only proceeded two blocks from the scene of the accident. On remand, the trial court may conclude that these factors militate against any consecutive time for leaving the scene, even if it is suspended.

 Nevertheless, the trial court found that Connolly had been drinking heavily on the day of the incident and, in addition, that he had been drinking heavily during the preceding days. Under the circumstances, the trial court would not be clearly mistaken in imposing an additional period of suspended time to ensure that Connolly refrains from excessive drinking and driving after he completes his period of incarceration. *See, e.g., Gibbs v. State*, 676 P.2d 606, 608 (Alaska App.1984) (suspended sentence may be imposed to give drunk driver substantial incentive to refrain from combining alcohol and driving after release from prison). We stress that a trial judge simultaneously sentencing for multiple offenses may impose a total sentence that is reasonable, taking into account all of the circumstances, even though one of the components of the total sentence, viewed in isolation, might be clearly mistaken if only that offense were considered. *Waters v. State*, 483 P.2d 199, 201–02 (Alaska 1971).

The sentence of the superior court is vacated and this case is REMANDED for resentencing in conformity with *McManners v. State*, 650 P.2d 414, 416 (Alaska App.1982).