**David Lee PARKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8114.

Court of Appeals of Alaska.

May 14, 2004.

---

Averil Lerman, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION ON REHEARING

MANNHEIMER, Judge.

In February 2000, David Lee Parker pleaded no contest to three felonies as part of a plea bargain with the State of Alaska, but he later sought permission to withdraw his pleas. Parker asserted that he decided to accept the State's plea bargain, rather than going to trial, because he was laboring under a mistaken belief concerning the consequences of winning a suppression issue on appeal. Following an evidentiary hearing, the superior court concluded that even if Parker had misunderstood the consequences of winning the suppression motion, this mistaken understanding had not been the motive for Parker's decision to accept the State's offered plea bargain. Accordingly, the superior court ruled that Parker had failed to present a fair and just reason for withdrawing his pleas. We affirmed the superior court's decision in *Parker v. State,* Alaska App. Memorandum Opinion No. 4850 (March 31, 2004), 2004 WL 720111.

Parker now seeks rehearing of our decision. He points out that, in addition to challenging the superior court's refusal to let him withdraw his pleas, he also challenged his sentence on various grounds. Parker is correct that we failed to decide his sentence appeal issues. We apologize to the parties for failing to address those issues in our previous decision, and we address them now.

Parker also seeks reconsideration of our decision of the plea-withdrawal issue. For

the reasons explained here, we reaffirm our decision of that issue.

*The basic facts of the plea-withdrawal issue*

Parker had a sexual relationship with V.M., a seventeen-year-old girl. Parker took sexually suggestive photos of V.M. and he also made videotapes of their sexual relations. The photographs and videos were apparently made for private, non-commercial purposes. Parker kept the photos and videos in a briefcase. These materials came to the attention of the authorities when Parker's son brought the briefcase to the police.

Even though Parker's sexual relations with V.M. were lawful (since V.M. was older than sixteen),[1] Alaska's exploitation of minors statute, AS 11.41.455(a), forbids sexually explicit photography and videography of a child younger than eighteen. Parker was therefore indicted for unlawful exploitation of a minor and possession of child pornography.[2] He was also indicted for third-degree controlled substance misconduct (distributing marijuana to a minor) and interference with official proceedings (offering a benefit to V.M. in an attempt to influence her testimony).[3]

Seven months later, Parker was indicted on far more serious charges. The police discovered LSD inside Parker's briefcase, and further investigation revealed evidence that Parker had given LSD to three minors: V.M., A.B., and J.O. Based on this investigation, the grand jury indicted Parker on three counts of first-degree controlled substance misconduct.[4] This offense is an unclassified felony with a maximum penalty of 99 years' imprisonment.[5]

The primary strategy of the defense was to seek suppression of the evidence against Parker. In pursuit of this strategy, Parker's attorney—John Bernitz—filed a motion alleging that the police had illegally obtained Parker's briefcase. But in the meantime, Bernitz engaged in plea negotiations with the State. These negotiations intensified after the superior court denied Parker's suppression motion and Parker's case was calendared for trial.

On January 11, 2000, Parker and Bernitz made an offer to the State. When the State did not respond, Parker and Bernitz made a revised offer on February 10: Parker would plead no contest to one class A felony, with a 7-year ceiling on Parker's prison term, and Parker would preserve his right to litigate the suppression motion on appeal (*i.e.*, Parker's pleas would be *Cooksey* pleas).[6]

Four days later, on February 14, the State responded with a counter-offer. The State would reduce Parker's three unclassified felonies (the three counts charging distribution of LSD to minors) to a single class A felony—a single consolidated count of *attempted* distribution of LSD to minors—with the proviso that Parker would concede aggravating factor AS 12.55.155(c)(10), conduct among the most serious within the definition of the offense (because he was actually guilty of the completed crime). Parker would plead no contest to this reduced charge, as well as to one count of exploitation of a minor and one count of possession of child pornography.

Bernitz discussed the State's counter-offer with Parker. Parker said that he was willing to plead no contest to the three charges proposed by the State, but he wanted to preserve his right to litigate the suppression motion on appeal. Bernitz then contacted the State and said that Parker would plead no contest to the three charges if his pleas could be *Cooksey* pleas—*i.e.*, if Parker could reserve his right to appeal the superior court's denial of the suppression motion.

Sometime mid-day on February 15, 2000, the district attorney's office delivered a memo to Bernitz in which the prosecutor rejected the suggestion of *Cooksey* pleas.

1. *See* AS 11.41.434(a)(3).

2. AS 11.41.455(a) and AS 11.61.127(a), respectively.

3. AS 11.71.030(a)(2) and AS 11.56.510(a)(2)(A), respectively.

4. AS 11.71.010(a)(2).

5. AS 11.71.010(c); AS 12.55.125(b).

6. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

The prosecutor's memo stated that *Cooksey* pleas would not be legal in Parker's case because the suppression issue that Parker wished to litigate (suppression of the contents of the briefcase) would not be dispositive of the charges against Parker. The text of the third paragraph of this memo read:

[A] problem with a *Cooksey* plea in this case [is that] the search issue is [not] truly dispositive. The principal victim, V.M., could testify about most, if not all, of the crimes Mr. Parker is charged with, even if the entire contents of the briefcase were suppressed. Other witnesses could also testify about those crimes, [even] without the briefcase.

After Bernitz received this memo from the prosecutor, he sent a memo in reply. In his memo, Bernitz stated that he was going to meet with Parker before noon that day, and they were going to discuss whether to accept the State's offer (that is, whether to give up the idea of *Cooksey* pleas) or go to trial.

Bernitz did indeed meet with Parker that day, and he made written notes of their discussion. Bernitz explained to Parker that if Parker chose to reject the State's offer and go to trial, he would face more prison time if he was convicted (because Parker would be tried on three unclassified felonies), but Parker would preserve the motion seeking suppression of the contents of the briefcase. On the other hand, if Parker accepted the State's offer, he could avoid having to go through a trial and he would face less prison time, but he would have to abandon the suppression motion.

Bernitz advised Parker that, in his opinion, Parker would probably lose at trial. Moreover, Bernitz advised Parker that even if Parker went to trial so that he could preserve the suppression issue, Parker would probably lose the appeal.

Bernitz's concluding note from that meeting was, "[Parker] was unwilling to take the risk, so he decided to take [the State's] offer." The parties appeared in court the following day (February 16, 2000), and Parker entered no contest pleas to the three charges proposed by the State.

Later, when Parker sought to withdraw his pleas, he asserted that he had been misled by the final sentence of the district attorney's memo quoted above. Parker testified that he believed that sentence to mean that, even if he pursued the suppression issue on appeal and won, the police who discovered the LSD in the briefcase would still be able to testify about what they had found (even though the physical substance itself was suppressed). Parker asserted that this mistaken belief was the reason he chose to accept the State's plea bargain rather than going to trial and, if convicted, pursuing an appeal.

John Bernitz also testified at the plea-withdrawal hearing. Bernitz acknowledged that he advised Parker that winning the suppression motion would not stop the State from proving the drug offenses—not because the police could still testify about finding the LSD in Parker's briefcase, but because the three teenagers could still testify that Parker gave them LSD (that is, LSD other than what was found in the briefcase). Bernitz declared that he remembered "several conversations" with Parker in which they discussed the possibility that the three teenagers could testify against him even if his suppression motion was successful on appeal.

After hearing Parker's and Bernitz's testimony, Judge Card concluded that even if Parker had been laboring under the mistake he claimed, this was not the reason why Parker decided to accept the State's plea bargain. As we explained in our prior decision:

Judge Card noted that Parker had a substantial motive to reach a plea agreement with the State: he was charged with three counts of distributing LSD to minors, an unclassified felony with a maximum sentence of 99 years' imprisonment. Moreover, Parker understood that he still could be convicted of these offenses based on the young women's testimony, even if the Court of Appeals ultimately agreed with him about suppressing the briefcase.

In addition, Judge Card noted that Bernitz, in a pre-hearing affidavit, had stated that one of Parker's main motivations for choosing to accept the plea bargain was his

desire to spare his family the stress that a trial would entail. According to Bernitz, Parker repeatedly told him that his mother was urging him not to go to trial because a trial would put too much stress on Parker's young sons. Judge Card noted that he had independent knowledge, from prior court hearings in Parker's case, that one of Parker's sons "suffered from a debilitating disease" and had become "very distraught" at one hearing.

Judge Card concluded that "those are the types of things [that] Mr. Parker was thinking about at the time he entered his plea[s]", rather than Parker's alleged misunderstanding about the admissibility of police testimony.

*Parker v. State*, Memorandum Opinion No. 4850 at 12, 2004 WL 720111 at *6–7.

*Parker's request for reconsideration of our decision*

In his petition for rehearing, Parker asserts that this Court "reviewed the trial court record, and essentially concluded that Parker ... only sought to withdraw his plea for reasons unrelated to the reasons he asserted and testified about [in the] evidentiary hearing [in] the trial court." This is a mischaracterization of what an appellate court does, and a mischaracterization of what we did in Parker's case.

■ It was Superior Court Judge Larry D. Card who concluded that Parker's decision to plead no contest was not materially influenced by Parker's mistaken understanding concerning the consequences of winning the suppression motion. Our task, as an appellate court, was not to reweigh the evidence or to make our own decision about Parker's reasons for entering his pleas. Rather, our task was to determine whether the evidence presented at the evidentiary hearing supported Judge Card's decision.

■ Parker further asserts that we misconstrued the trial court record when we asserted, on page 14 of our opinion, that "Parker did not challenge" Bernitz's testimony that he had held several discussions with Parker about the suppression motion and the related problem that, even if Parker ultimately won the suppression motion, the

three teenagers could still testify that Parker delivered LSD to them. In his petition for rehearing, Parker asserts that this is an erroneous characterization of the record:

Although David Parker understood that the teenage girls might well be able to testify against him at a retrial (if he were to win the appeal of the denial of his suppression motion, and succeed in suppressing the LSD [in the briefcase] )[,] he never believed that he would be convicted of serious drug charges *on their unsupported testimony alone.* ... Parker was willing and ready to go forward and face the testimony of the teenagers; it was his mistaken idea that [their] testimony would then be corroborated by police testimony that [convinced] him to enter [his no contest] plea[s]. Although he knew [that] he "could" get convicted on the basis of the teenagers['] testimony, Parker did not think that he *would* get convicted on the basis of [their] testimony alone.

(Emphasis in the original)

But Parker's petition for rehearing contains no citations to the record to support these factual assertions. We have re-read Parker's testimony at the hearing (transcript pages 375 to 421), and we are unable to find any instance where Parker asserted that he would have been willing to risk retrial, even with the teenagers testifying against him, so long as the police were barred from giving corroborating testimony about their discovery of another quantity of LSD in Parker's briefcase. If anything, Parker's testimony at the evidentiary hearing indicates that he did not draw any distinction between the teenagers' testimony and police testimony.

In his direct testimony, Parker repeatedly declared that he lost heart in his case after he read the district attorney's memo and concluded that, even if he won his suppression motion on appeal, "all the testimony" and "all the witnesses" could be used against him at a retrial. Parker's repeated references to "all" of the witnesses prompted the State's attorney to engage in the following cross-examination:

*Prosecutor:* I ... want to focus [the inquiry] a little tighter than that. Were

you [and Bernitz] just talking about the [LSD], or [were you] talking about everybody?

*Parker:* We were talking about testimony.

*Prosecutor:* All the testimony?

*Parker:* All testimony; all the testimony.... [The district attorney's memo] says that, you know, it says other witnesses, all the witnesses, everybody.

*Prosecutor:* Okay, well ... I want to be a little more specific because, ... [in] the last sentence of the third paragraph ... [the district attorney's memo] actually says, "other witnesses" rather than "all witnesses", doesn't it?

*Parker:* Yes, sir, but I didn't make a distinction like that.

We note, moreover, that when Judge Card announced his decision (denying Parker's motion to withdraw his pleas), the judge spoke at length about the fact that, even if the contents of the briefcase were suppressed, the State would still be able to present the "testimony of the young women ... about having received LSD [from Parker]". The judge declared that, because the women's testimony would still be available to the State, Parker "had a substantial motivation to negotiate his case [down] to a single class A felony, as opposed to having the potential for [conviction of] three unclassified felonies".

A little later in his remarks, Judge Card again declared that Parker "had very good reasons" for accepting the State's plea bargain. He directed the parties' attention to Bernitz's pre-hearing affidavit, in which Bernitz stated that he explained to Parker "that even if the briefcase contents were suppressed, the victims would still be able to testify". Judge Card then emphasized Bernitz's choice of words: "[He said] the 'victims'. The police were not 'victims'."

As explained above, Parker asserts in his petition for rehearing that his decision to accept the State's plea bargain hinged pri-

marily on his evaluation of his differing chances for success (1) at a retrial in which only the three teenagers would testify about the drug charges, versus (2) a retrial in which both the teenagers and the police would testify. Given Parker's current assertion about his decision-making process, we find it significant that Parker and his attorney listened to Judge Card give the above-described analysis of Parker's motivation for accepting the plea bargain, and they never objected or sought an opportunity to clarify their position.

In sum, we conclude that the assertions of fact contained in Parker's petition for rehearing concerning his reasons for accepting the plea bargain were never presented to the trial court and are not supported by the record. We therefore deny Parker's petition on this issue.

### *Parker's sentence appeal*

■ Parker pleaded no contest to three crimes: attempted first-degree ·misconduct involving a controlled substance (*i.e.,* attempted delivery of LSD to a minor),[7] unlawful exploitation of a minor (for taking sexually explicit photographs and videos of his seventeen-year-old girlfriend),[8] and possession of child pornography (possessing these same photographs and videos).[9]

As part of his plea bargain, Parker stipulated that his conduct with regard to the drug charge was "among the most serious" (aggravator AS 12.55.155(c)(10)) because he was factually guilty of the completed crime, not just the attempt.[10] However, Parker asked the superior court to find that his other two offenses (exploitation of a minor and possession of child pornography) were mitigated under AS 12.55.155(d)(9); that is, Parker asked Judge Card to find that his conduct was among the least serious included within the definitions of these crimes.

In arguing for mitigator (d)(9), Parker noted that all of the photographs and videos seized by the State depicted V.M., Parker's

---

**7.** AS 11.71.010(a)(2).

**8.** AS 11.41.455(a).

**9.** AS 11.61.127(a).

**10.** *See Parker,* Memorandum Opinion No. 4850 at 4, 2004 WL 720111 at *2.

seventeen-year-old girlfriend. As we have explained, Parker's sexual relations with V.M. were lawful (because she was over the age of consent). Parker further noted that the State produced no evidence that Parker had distributed or shown these photos and videos to anyone else (besides V.M.). Parker argued that, considering all of the conduct encompassed by the statutes defining exploitation of a minor and possession of child pornography, Parker's private creation and private possession of photographic and videographic images for the personal use of himself and his lover was among the least serious conduct.

We agree. We acknowledge that Parker, by pleading no contest to these offenses, abandoned his earlier contention that Alaska's exploitation of a minor statute and possession of child pornography statute were unconstitutional as applied to his conduct in this case.[11] Nevertheless, Parker was still entitled to argue that, given the lawfulness of his sexual relations with V.M., and given the lack of evidence that Parker distributed these images to anyone else (whether commercially or non-commercially), his conduct was minimally serious when compared to the chief evils targeted by these statutes: the commercial creation of child pornography and its distribution to pedophiles.

The State argues that Parker's conduct can not be deemed among the least serious because

. [the exploitation of a minor statute] is concerned with ... the adverse effects on a minor's future ability to form normal adult sexual relationships [after the] minor is manipulated into engaging in sexual activity. The statute is concerned with disparities in power and maturity.... The record

actually demonstrates that the 51–year–old Parker manipulated or induced the 16–[and 17–] year-old V.M. to pose [in sexually suggestive ways] and engage in occasional sexual acts....

One can hardly argue with the State's position that disparities in maturity and power can sometimes lead to unfair manipulation or unfair pressure to engage in sexual conduct. This is true regardless of the ages of the people involved. But the Alaska legislature has declared that, in most instances, persons who have attained the age of sixteen are mature enough to make these decisions for themselves.

The State's argument that V.M. was "manipulated into engaging in sexual activity" is really an attack on the legislature's decision to establish sixteen as the age of consent. But this Court has no authority to re-evaluate the legislature's decision in this matter.

In sum, we agree with Parker that his private creation and private possession of sexual images of his seventeen-year-old girlfriend constituted conduct among the least serious within the definition of exploitation of a minor and possession of child pornography. Judge Card's decision to the contrary is clearly erroneous.[12] Parker must be resentenced.

■ Parker also argues that Judge Card imposed an illegal sentence on the possession of child pornography count. Possession of child pornography is a class C felony.[13] Parker, as a second felony offender, faced a presumptive term of 2 years' imprisonment for this charge.[14]

When a defendant is subject to presumptive sentencing, the sentencing judge can not adjust the specified presumptive term upward—even if the increased term of impris-

**11.** *Compare Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 254–55, 122 S.Ct. 1389, 1404, 152 L.Ed.2d 403 (2002) (striking down the portion of the Child Pornography Prevention Act of 1996 that prohibited the creation of computerized images depicting sexual activity with underage children); *Massachusetts v. Oakes*, 491 U.S. 576, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (declining to decide the constitutionality of a statute that prohibited adults from posing or exhibiting nude minors "for purposes of visual representation or reproduction in any book, magazine, pamphlet, motion picture, photograph, or picture" because

the state legislature had amended the statute in the interim).

**12.** *See Lepley v. State*, 807 P.2d 1095, 1099 n. 1 (Alaska App.1991) (a sentencing judge's findings as to the existence of aggravating and mitigating factors are reviewed under the "clearly erroneous" standard).

**13.** *See* AS 11.61.127(d).

**14.** AS 12.55.125(e)(1).

onment is suspended in whole or in part—unless the State proves one or more aggravating factors under AS 12.55.155(c).[15] The State did not prove any aggravators with respect to the child pornography charge, but Judge Card nevertheless sentenced Parker to serve 3 years with 1 year suspended.

On appeal, the State concedes that this sentence is illegal, and we conclude that the State's concession is well-founded.[16] The superior court must reduce Parker's sentence on this count to no more than 2 years' imprisonment—the 2–year presumptive term with no additional suspended jail time. Moreover, the superior court must consider whether this 2–year presumptive term should be reduced based on the "least serious" mitigator that was mistakenly rejected at Parker's initial sentencing.

*Conclusion*

We re-affirm our prior decision concerning Parker's effort to withdraw his pleas. However, we reverse the decision of the superior court regarding mitigator (d)(9), and we vacate Parker's sentence for possession of child pornography because that sentence is illegal.

Parker's convictions are AFFIRMED. Parker's sentences for exploitation of a minor and for possession of child pornography are VACATED. The superior court shall resentence Parker in conformity with this opinion.

---

**15.** *See Connolly v. State,* 758 P.2d 633, 635, 636 & n. 3 (Alaska App.1988); *McManners v. State,* 650 P.2d 414, 416 (Alaska App.1982).

**16.** *See Marks v. State,* 496 P.2d 66, 67–68 (Alaska 1972) (holding that an appellate court is obliged to independently evaluate any concession of error by the State in a criminal case).