Calvin J. KELLY, Appellant,

v.

STATE of Alaska, Appellee.

No. 6311.

Court of Appeals of Alaska.

May 13, 1983.

Marlin D. Smith, P.C., Fairbanks, for appellant.

Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Calvin Kelly was indicted on February 24, 1981, on charges of issuing a bad check in violation of AS 11.46.280. The indictment alleged that on or about the 24th day of October, 1980, Kelly had issued a check payable to Fred Meyer Jewelers in Fairbanks knowing that it would not be honored by the drawee. Kelly was convicted on June 18, 1981, following a jury trial. He was subsequently sentenced to a maximum term of five years' incarceration. He then filed this appeal.

Kelly first argues that the trial court erred in allowing him to represent himself. He asserts that the trial court failed to establish for the record, in accordance with *McCracken v. State,* 518 P.2d 85 (Alaska 1974), that his waiver of counsel was knowing and intelligent, and that he was capable of representing himself. Kelly also argues that the seriousness of the trial court's failure to make this inquiry is compounded by the fact that Kelly decided to represent himself only because his attorney had made no contact with him as late as ten days before the omnibus hearing.

Discussion of this issue is not possible without reference to the history of Kelly's decision to represent himself at trial. At his March 2, 1981, arraignment Kelly stated that he wanted to represent himself, though he did accept appointment of consultative counsel. On March 4, 1981, Kelly wrote a letter to Superior Court Judge Jay Hodges in which he stated that he had changed his mind and now desired appointment of a public defender. In response to this letter the public defender agency was appointed to represent Kelly on March 10, 1981.

On April 12, 1981, Kelly wrote a letter to Superior Court Judge James Blair requesting that his attorney, David Backstrom, be disqualified; Kelly argued that another public defender should be appointed because Backstrom had failed to make contact as of that date. On May 26, Kelly filed a "Motion for Self-Representation with Assistance of Public Defender as for Witnesses and Subpoenas." On the following day Kelly wrote a letter to Superior Court Judge Gerald Van Hoomissen in which he restated his desire to defend himself; in this letter, however, Kelly did not indicate that dissatisfaction with his attorney was the reason for his decision to act as his own counsel.

Kelly's motion for self-representation was granted at an omnibus hearing held on June 5, 1981. The hearing opened with this exchange:

*Judge Van Hoomissen:* Mr. Kelly, you've indicated in your last motion that you want to represent yourself ... [Y]ou've gone from wanting to represent yourself to desiring the public defender to not wanting Mr. Backstrom ... to wanting a particular attorney, back not to representing yourself.

*Kelly:* Yes, your honor. The reason for this is I've—a public defender has been appointed to me [sic] since March the 6th and I have never seen a public defender yet. And I think it's very inadequate on

their part and I'm ready for trial on the 15th of June ... I don't feel that I've been given adequate attorney to start with. I've researched this case ... I filed a motion to represent myself and I feel that I could do it in [an] adequate—in proper way.

*Van Hoomissen:* Well, all right. First of all let me just say this. You have a right to represent yourself, but you must be aware of the fact that I would hold you to the same standard of conduct and the same rules of evidence that I will an attorney. I'm not going to bend them because of the fact you're representing yourself. Do you understand that?

Kelly asserts that this inquiry by the court failed to conform to the standards announced in *McCracken v. State,* 518 P.2d 85, and that the failure was exacerbated by the lack of contact between Kelly and his public defender before trial.

In *McCracken,* 518 P.2d at 91, the supreme court decided that the Alaska Constitution guaranteed a criminal defendant the right of self-representation. However, the court also stated:

The right is not absolute. In order to prevent a perversion of the judicial process, the trial judge should first ascertain whether a prisoner is capable of presenting his allegations in a rational and coherent manner before allowing him to proceed *pro se.* Second, the trial judge should satisfy himself that the prisoner understands precisely what he is giving up by declining the assistance of counsel.

The Alaska Supreme Court has recognized the continuing validity of this rule on several occasions; *see, e.g., Swensen v. Anchorage,* 616 P.2d 874, 877–78 (Alaska 1980); *Gregory v. State,* 550 P.2d 374, 380 (Alaska 1976). In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court also recognized the existence of a criminal defendant's constitutional right of self-representation, but found that this right could be considered intelligently exercised only upon a showing, on the record, that the defendant was advised of the dangers and disad-

vantages of self-representation. *Id.* 422 U.S. at 835–36, 95 S.Ct. at 2541–42, 45 L.Ed.2d at 581–82.

The state does not maintain that the trial court complied with the *McCracken* standard. Rather, the state takes the position that non-compliance can be excused in light of the facts of this case. The state points to Kelly's extensive criminal record, his legal sophistication as evidenced by several pretrial motions that he filed, and the relatively uncomplicated nature of the crime with which he was charged. The state argues that these considerations would have made a *McCracken* inquiry merely *pro forma.* The state further argues that the trial court's failure to make a full *McCracken* inquiry can be excused because Kelly, while allowed to represent himself, was also given an attorney to assist him and thus received hybrid representation.

■ We are persuaded that the facts of this case compel a finding that the trial court's failure to make a full *McCracken* inquiry can be excused. Our review of the record reveals that Kelly possesses a considerable degree of legal acumen. His understanding of the legal process is demonstrated by the pretrial motions that he filed and by the memoranda in support of those motions. Judge Van Hoomissen was aware of Kelly's familiarity with legal research because Kelly had filed a motion requesting greater access to the Fairbanks jail law library. We also note that Kelly has had considerable experience with the criminal justice system. Thus, the record indicates a strong likelihood that Kelly was aware of the advantages inhering to a criminal defendant from representation by counsel. In *Fowler v. United States,* 411 A.2d 618, 623–24 (D.C.App.1980), the court relied upon similar circumstances in deciding that the trial court had not compromised the defendant's sixth amendment rights despite its failure to make a formal inquiry on the record. Although Kelly's experience with the legal process and his skill in representing himself might not, standing alone, excuse the failure to make a proper inquiry on the record, we deem these

factors highly relevant in assessing the significance of the fact that Kelly was afforded hybrid representation and did not, in fact, act entirely on his own.

We agree with the state's assertion as to the importance of Kelly's having received the benefits of hybrid representation at trial. At the omnibus hearing Judge Van Hoomissen acknowledged Kelly's request for limited assistance of counsel, but made it clear that the public defender, David Backstrom, would not be relegated to the role of "a gopher going out serving subpoenas and the rest of it."[1] The record convinces us that Backstrom actually did play a significant role in Kelly's defense. For example, Backstrom brought the court's attention to contacts between witnesses and jurors, which allegedly took place during a recess; he objected to the prosecution's use of a Virginia conviction for grand larceny when Kelly elected to take the stand; and he also questioned Kelly on direct and redirect examination.

In *Cano v. Anchorage,* 627 P.2d 660 (Alaska App.1981), we decided that it was error for the trial court to force the defendant to choose between self-representation and representation by counsel, and we recognized that hybrid representation would in some cases be an appropriate alternative to representation by counsel. We did not address the question of whether a *McCracken* inquiry would be required in situations involving some form of hybrid representation. In the present case, we believe that the substantial level of assistance rendered at trial by Kelly's counsel justifies the conclusion that the trial court's failure to make a formal *McCracken* inquiry may be excused.

At least one jurisdiction has expressly decided that formal inquiry of the defendant is not required in any case where hybrid representation is employed. In reaching this conclusion, the Texas Court of Criminal Appeals reasoned that hybrid representation did not involve waiver of counsel;

thus, failure to establish for the record that the defendant's waiver was voluntary and knowing could not be considered error. *Maddox v. State,* 613 S.W.2d 275, 286 (Tex. Cr.App.1981) (opinion on rehearing); *Phillips v. State,* 604 S.W.2d 904, 908 (Tex.Cr. App.1979). *Accord Rainwater v. State,* 634 S.W.2d 67 (Tex.Cr.App.1982). We believe that the basic premise of *Maddox* is applicable to this case: since Kelly benefited substantially from Backstrom's assistance as counsel at trial, the need for the trial court to satisfy the *McCracken* requirement was necessarily less acute.

Our holding, however, is a narrow one. We do not conclude that a *McCracken* inquiry can be dispensed with in every case where the defendant receives some form of hybrid representation. We find only that Kelly's considerable legal experience and expertise and the substantial level of legal representation that he actually received from counsel at trial excuse the trial court's failure to make a full inquiry on the record to establish expressly that Kelly knowingly and intelligently waived his right to legal representation.

■ Kelly's next argument involves the prosecution's use for impeachment purposes of a jury verdict finding that Kelly had committed armed bank robbery in violation of federal law. The verdict in the federal trial was returned on May 20, 1982; Kelly had not yet been sentenced on this charge when his state trial commenced on June 16, 1981. Kelly contends on appeal that the trial court's decision to permit impeachment through use of this conviction was error. He relies upon Federal Rule of Criminal Procedure 32(b), which defines a judgment of conviction as including the sentence received. Kelly also relies upon *United States v. Semensohn,* 421 F.2d 1206, 1208 (2d Cir.1970), in which the trial court was found to have erred in allowing the defendant to be impeached at trial with his plea of guilty in a separate case, which was awaiting sentencing.

1. We are not convinced by Kelly's contention that his decision to represent himself was attributable only to his attorney's purported failure to contact him. Though it is true that Kelly vacillated on this question, his desire to represent himself was expressed long before he became dissatisfied with Backstrom.

Rule 609(a) of the Alaska Rules of Evidence [2] applies in this situation, permitting the use of certain prior convictions to impeach the testimony of a witness. The rule is based upon corresponding Federal Rule of Evidence 609. The state acknowledges that the commentary to Rule 609(a) is silent concerning the question of when a "conviction" arises. However, the state contends that Evidence Rule 609(f) provides support for its position that use of the bank robbery conviction was proper. Evidence Rule 609(f) reads:

> *Pendency of Appeal.* The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

The state suggests that there is no logical reason why impeachment of a witness should be permitted after his sentencing for a conviction from which an appeal has been taken, but not permitted after a jury has reached a finding of guilt on which sentencing has not occurred. In *United States v. Klein,* 560 F.2d 1236 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978), the Fifth Circuit Court of Appeals accepted precisely this argument in connection with Federal Rule of Evidence 609(e), which is identical to Alaska Rule 609(f). The court reasoned that,

> if a jury can comprehend that a prior conviction on appeal may be reversed, it can also comprehend that a jury verdict of guilt may be set aside upon a motion for a judgment of acquittal ... [or] a motion for a new trial.... Thus, we can

perceive no logical distinction, for purposes of impeachment, between a conviction on appeal and a jury verdict of guilty where judgment and sentence have not yet been entered, so long as the defendant has the opportunity to explain to the jury the legal status of the "conviction."

*Id.* at 1240 (footnote omitted). We find this reasoning persuasive.

The term "conviction" does not always denote a formally entered judgment. For example, under certain circumstances the legislature has used "conviction" to mean the finding of guilt, and not the imposition of sentence and entry of a judgment of conviction. *See* AS 12.30.040(b); *Kwallek v. State,* 658 P.2d 794, 795 n. 1 (Alaska App.1983). Impeachment is permitted here because the witness has been found guilty of conduct which might cast doubt upon the veracity of his testimony. A witness' truthfulness is affected by a conviction for a crime of dishonesty or false statement to the extent that the conviction represents a determination that the witness has committed acts indicating his potential dishonesty. Thus, for purposes of impeachment, the probative value of a prior conviction is independent and unrelated to the status of the witness as a convicted criminal or to the fact that the witness has been subjected to punishment for his offense. Accordingly, there is little reason to require that impeachment of a witness by prior convictions calls for the existence of both a valid finding of guilt—a verdict—and a formally entered sentence or judgment of conviction.[3] Therefore, we hold that, for the pur-

**2.** A.R.E. 609(a) provides in pertinent part:

(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

**3.** The situation of the bail statute and of the present case must be distinguished from the use of "convictions" under AS 12.55.125–.155, for presumptive sentencing purposes. It is the imposition of a disability or penalty resulting from a conviction which justifies treatment of a defendant as a second offender for purposes of presumptive sentencing under AS 12.55.-125–.155. Presumptive sentencing is appropriate for a multiple offender when his current

offense was committed after the offender has already been sentenced and given an opportunity to reform on a prior occasion. *See State v. Rastopsoff,* 659 P.2d 630 (Alaska App.1983). In the present case, the finding of guilt is the crucial factor in terms of credibility, and formal imposition of a sentence has no separate effect on the defendant's truthfulness as a witness.

A separate argument could be made that the finality of a formal judgment of conviction is a factor that should preclude impeachment based solely on a verdict of guilt. We believe that, in the ordinary case, the added finality of a formal judgment is not sufficiently significant to prevent reliance on a verdict of guilty for impeachment purposes. However, there may be indi-

poses of Evidence Rule 609(a), "conviction" may be defined to include those situations in which a verdict of guilt has been accepted, but sentencing has not yet occurred.

At any rate, we believe that use of the bank robbery verdict to impeach Kelly, even if erroneous, was harmless error. A judgment of conviction on the federal charge was duly entered after Kelly's conviction in this case, and it would now be pointless to remand for a new trial in which the federal conviction would now plainly be admissible. *See State v. Bouthillier*, 4 Or. App. 145, 479 P.2d 512 (Or.App.1970). Furthermore, we believe we can fairly say in this case that the improper material did not affect the result. *Sandvik v. State*, 564 P.2d 20, 24 n. 7 (Alaska 1977). *See Fairman v. State*, 83 Nev. 287, 429 P.2d 63, 64 (Nev. 1967).

Kelly also argues that the trial court erred in permitting a series of bad checks written by him to be introduced into evidence. These checks were written between October 13 and October 26, 1980; the check Kelly wrote to Fred Meyer, which was the subject of the bad check charge, was written on October 24. Also admitted was a group of Kelly's bank statements which listed these checks.

Kelly argues that admission of these checks was error because any probative value the checks possessed was outweighed by the prejudice they created. A.R.E. 403. The state argues that admission of this evidence was proper under Evidence Rule 404(b),[4] as evidence of the intent required under AS 11.46.280, or as evidence that the bad check Kelly wrote to Fred Meyer was not simply a mistake. The state also notes that Kelly made no objection at all to fourteen of the seventeen checks and objected to introduction of the bank statements which listed the bad checks only on grounds of authenticity.

We hold that admission of this evidence was proper under Rule 404(b) to prove intent and absence of mistake. Kelly fails to demonstrate how any prejudice created by the evidence to which an objection was actually entered outweighs its probative value. We conclude that Kelly has not shown that the trial court's action amounted to an abuse of its discretion. *Sheakley v. State*, 644 P.2d 864, 873 (Alaska App.1982); *Doisher v. State*, 632 P.2d 242, 253–54 (Alaska App.1981), *rev'd on other grounds*, 658 P.2d 119 (Alaska 1983).

Kelly's last asserted trial error involves testimony by Ralph Seekins, a Fairbanks car dealer and a member of an organization known as the Full Gospel Businessmen's Fellowship. This group visited and made contact with Fairbanks area prisoners; Seekins met Kelly through the group's activities, and Kelly worked for Seekins as a janitor after his release on bail pending trial. At trial Kelly decided to call Seekins as a character witness, apparently hoping that Seekins' testimony would establish that Kelly had received loans from Seekins in the past and had always paid them back. However, Kelly also questioned Seekins about a specific loan:

Q: [W]hat large amount did he [Kelly] borrow from you?

A: I don't recall anything over—in excess of $100. I don't recall anything larger than that, not from me.

Q: Mr. Seekins, did the defendant ever show you a check that he had made overdrawn and asked you to borrow the money to make it good that he would give it back to you?

A: I knew of overdrawn checks.

Q: No, I'm talking about a check that—he came in from school one day.

vidual cases where uncertainty as to the validity of a verdict exists and where such uncertainty is sufficient to justify a ruling that impeachment based on the verdict should not be permitted.

4.   A.R.E. 404(b) provides:
     *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A: If so, I—I—I don't remember any significant dollar amount. I have a hard time remembering anything that was ... significant, because I—I make it a policy not to loan money to anybody, even my employees. My attitude is if I—if I load [sic, loan] money to someone, I expect never to see it again, and if I do get it back, I'm surprised.

On cross-examination Seekins testified that he had made cars available to Kelly; when the last such car had developed mechanical problems, Kelly had asked for and obtained a pickup truck from Seekins after promising to pay Seekins for it within a week. The prosecution proceeded to elicit testimony, without objection by Kelly or Backstrom, that Seekins never saw the truck again. When the trial court questioned the relevance of this testimony, the prosecution responded that testimony about the truck would counter the defendant's contention "that he made good the things that he borrowed." This explanation was accepted by the court and cross-examination continued with testimony that the truck had ultimately been abandoned in Champaign, Illinois.

Apparently in order to rehabilitate Seekins' testimony, Kelly questioned him extensively on redirect about the allegedly stolen truck and the contents of a sales agreement that the parties purportedly had written. On recross-examination the state again tried to establish that Kelly had stolen this truck.

Kelly now contends that it was error for the court to permit the prosecution to cross-examine Seekins concerning this truck. His argument is virtually the same as his previous argument concerning the bad checks; Kelly asserts that this testimony, as evidence of past wrongful acts, should have been excluded by Evidence Rule 404(b), and he again maintains that the prejudice created by admission of this testimony outweighs its probative value. A.R.E. 403.

The state asserts that Kelly's questioning of Seekins was intended to create an inference that Kelly was a person who paid his debts; therefore, cross-examination about the truck was within the scope of direct examination and was properly admitted to rebut the inference of honesty created by Seekins' testimony on direct. The state also points out that it was actually Kelly who dwelt at great length on the fact that Seekins believed Kelly had stolen the truck.

■ While the ultimate purpose of Kelly's direct examination of Seekins is not absolutely clear, it does appear that Kelly was attempting to establish that he had repaid money borrowed from Seekins on several occasions. Since Kelly apparently sought to place his integrity in issue through his questioning of Seekins, the prosecution's limited questioning about the truck was proper rebuttal; certainly, in the absence of a timely objection by Kelly or Backstrom, this line of inquiry did not constitute plain error. The most damaging testimony about the allegedly stolen pickup occurred during redirect examination of Seekins by Kelly. This subject also received considerable attention during Backstrom's redirect examination of Kelly. Thus, the prejudicial impact created by Seekins' testimony is almost entirely attributable to conscious choices made by Kelly and his co-counsel. Under these circumstances, we find that admission of the challenged evidence did not constitute an abuse of discretion. *Doisher v. State,* 632 P.2d at 253–54.

Finally, Kelly contends that the sentence imposed by the court was excessive. Kelly was sentenced by Judge Gerald Van Hoomissen to a maximum sentence of five years' incarceration, to be served consecutively to Kelly's federal court sentences. Judge Van Hoomissen had initially expected to be able to rely on the presentence report prepared in Kelly's federal case; the state was not permitted to use this report, so a presentence report had to be prepared from information available to the district attorney.

At sentencing the district attorney argued that Kelly should receive the maximum term, based upon consideration of the sentencing objectives found in AS 12.55.-

005[5] and upon the state's contention that Kelly was a "worst offender in his class in terms of theft-related offenses." The state also argued the existence of two aggravating factors, AS 12.55.155(c)(7) and (10),[6] which would allow enhancement of Kelly's term if he had been presumptively sentenced.

In response, Kelly argued that he should be subject to presumptive sentencing. He pointed out that the state had served him with an authenticated copy of a prior Virginia conviction for grand larceny pursuant to AS 12.55.145(b),[7] but had failed to file a notice of aggravating or mitigating factors as required by AS 12.55.155(f). Kelly contended that the Virginia conviction triggered presumptive sentencing so that he should receive the presumptive, two-year sentence specified by AS 12.55.125(e)(1) for a second, class C felony.

The prosecution argued that the state's failure to file a notice of aggravating factors was chargeable to Kelly's conduct, because Kelly had requested an early sentencing, which precluded the state from obtaining authenticated copies of other judgments of conviction. Judge Van Hoomissen refused to treat this as a presumptive sentencing case. Instead, he expressly found Kelly to be a worst offender within his class. In response to questioning by Kelly, the trial court stated that it was relieving the state of the responsibility of complying with the statutory requirement that factors in aggravation (and mitigation) be filed in writing not later than ten days prior to the date of sentencing. Kelly was then sentenced to a non-presumptive five-year maximum term.

■ Kelly renews on appeal the argument that he should have been subject to presumptive sentencing. We agree with this contention. The legislature did not intend the presumptive sentencing provisions of the revised criminal code to be applied optionally, at the discretion of the court or the prosecution. The presumptive sentencing structure is mandatory, and it must be followed when it applies. When, as in this case, a party has had insufficient time to comply with the notice requirements relating to proof of prior convictions or aggravating and mitigating factors, the appropriate remedy should normally be a continuance of the sentencing proceedings. Failure to consider prior crimes for presumptive sentencing purposes can be condoned only in those cases where the state, after exercising due diligence, is unable to meet the statutory requirements for proof of a prior conviction. *See* AS 12.55.145(d).

5. AS 12.55.005 reads:

*Declaration of purpose.* The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter. In imposing sentence, the court shall consider

(1) the seriousness of the defendant's present offense in relation to other offenses;

(2) the prior criminal history of the defendant and the likelihood of his rehabilitation;

(3) the need to confine the defendant to prevent further harm to the public;

(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

(5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and

(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.

6. AS 12.55.155(c)(7) and (10) read:

(7) a prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a more serious class of offense than the present offense

(10) the conduct constituting the offense was among the most serious conduct included in the definition of the offense.

7. AS 12.55.145(b) reads:

When sentence is imposed under this chapter, prior convictions not expressly admitted by the defendant must be proved by authenticated copies of court records served on the defendant or his counsel at least 10 days before the date set for imposition of sentence.

Since it is undisputed here that Kelly had previously been convicted of a felony and was subject to presumptive sentencing, the non-presumptive sentence imposed by the sentencing court was unauthorized and unlawful. We must therefore vacate Kelly's sentence and remand his case for resentencing in accordance with the requirements of the presumptive sentencing statutes. We express no opinion concerning the presence or absence of aggravating and mitigating factors. However, on remand, the state should be given an appropriate period of time to allege and establish any prior convictions Kelly may have, and both Kelly and the state should be afforded ample time and opportunity to allege and prove aggravating and mitigating factors.

The judgment is AFFIRMED; the sentence is VACATED, and this case is REMANDED for resentencing.