Emmett W. EVANS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3065.

Court of Appeals of Alaska.

Nov. 22, 1991.

---

Brian Easton, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Emmett W. Evans appeals a conviction of second-degree assault that resulted from a jury trial in which Evans represented himself. Evans argues on appeal that he did not knowingly and intelligently relinquish his right to counsel. We reverse.

On November 4, 1988, Evans was indicted for assaulting another man with a pool cue; both Evans and the alleged victim were inmates at the state correctional facility in Seward. Kenai attorney Allan Beiswenger was appointed to represent Evans. On January 16, 1989, Evans apparently wrote to the superior court indicating that he was dissatisfied with Beiswenger and

that, if another attorney could not be appointed, he would "just go ahead and represent himself." Beiswenger then requested a hearing to determine Evans' competency to proceed without counsel.

At a hearing before Superior Court Judge James A. Hanson, Evans reiterated his displeasure with Beiswenger and his intent to represent himself if he could not get another attorney. In response, Beiswenger stated that the policy in his office was not to "shuffle attorneys in the event there is a complaint by an individual who is represented against a specific attorney." Beiswenger informed the court that he had met twice with Evans. According to Beiswenger, he had discussed what a lawyer could do for Evans and Evans was "familiar with what a lawyer can do." Beiswenger "would take no position as far as the court's inquiring to determine [Evans'] competency at this point to represent himself."

Upon inquiry by the court, the prosecution took the position that the court should make a determination as to Evans' competency to proceed without counsel. Expressing doubt about whether there could ever be "a situation where a person would be competent to represent themselves in a felony offense," the prosecution suggested that "some sort of co-counsel status should be worked out" if Evans was not capable of proceeding *pro se*.

Judge Hanson then addressed Evans personally. The judge ascertained that Evans had a high school education and had spent five years in the navy, where he had attained the rank of E–5 after receiving about eighteen months of training in electronics. Following his discharge, Evans spent several years working with the FAA and then worked as a service oiler on the Transalaska pipeline.

At the time of the hearing, Evans had been in prison for eleven years, serving a sentence for murder. He had been represented by counsel in the murder case but had not participated in his own defense. Since his conviction, Evans claimed to have spent approximately six months "on and off" working in the prison library on an appeal, but had not succeeded in getting it filed.

Judge Hanson asked Evans why he believed that he had the ability to represent himself. The inquiry led to the following exchange:

MR. EVANS: Well, I don't believe I'll adequately represent myself, but I'll do better than what the appointed attorney would do for me.

THE COURT: Why do you think so?

MR. EVANS: Well, he wants to sell me down the road. He wants me to plead guilty. And I don't feel I'm guilty. It's up to the jury to—to decide.

THE COURT: So, his advice has been for you to plead guilty?

MR. EVANS: Yes.

THE COURT: Did he indicate that he wouldn't assist you if you didn't plead guilty?

MR. EVANS: Well, he didn't even read the records or anything. He just come out and said, plead guilty.

Pressed further as to whether he knew how to conduct himself at trial, Evans replied, "To a certain point, yes."

Judge Hanson inquired of Beiswenger concerning the assertion that he had insisted that Evans plead guilty. Beiswenger acknowledged that, when he talked with Evans, he had not reviewed the grand jury tape, although he had reviewed the police reports and had had an investigator review the grand jury tape, as well as the police reports. According to Beiswenger, he and Evans had disagreed about the viability of Evans' self-defense claim. However, Beiswenger stated that "I obviously did not tell him that if he chose to go to trial, that I wouldn't do my best for him." When the court asked Beiswenger if he was willing to continue assisting Evans if he maintained his position, Beiswenger answered that he was, "to the extent that I'm going to be able to given I think feelings of distrust by Mr. Evans. And—he feels obviously very strongly about it, Your Honor."

Judge Hanson then informed Evans that, under the circumstances, he would not appoint a different attorney. The judge gave

Evans the choice of having Beiswenger or representing himself. Evans responded: "I'll represent myself then."

Although questioning the wisdom of Evans' decision, Judge Hanson declared that Evans was "competent, apparently intelligent, and can do this." The judge directed Beiswenger to remain present at trial to assist "in any manner that he [Evans] requests." Judge Hanson expressed the hope that Evans would take advantage of Beiswenger's presence, but he made it clear that Beiswenger was not to act on Evans' behalf unless requested to do so. Before recessing the hearing, Judge Hanson admonished Evans:

> I want to emphasize that I strongly believe, sir—and I've given you the right to represent yourself, so this is—I strongly believe that anybody who tries to represent himself has an ass for a lawyer and a fool for a client. If I were charged— [I've had] twenty more—more than twenty years in experience in courtrooms as a judge and I've been a lawyer. If I were charged with the crime with which you are charged, I would not attempt to represent myself.

As Evans began to respond, "I don't have the money for a lawyer, so ...," Judge Hanson recessed the hearing.

Two weeks later, Evans proceeded to trial before a jury presided over by Acting Superior Court Judge David C. Stewart. Evans' efforts in his own defense at trial were minimal at best. He did not consult with Beiswenger or ask him to intercede. At the conclusion of the trial, the jury sent a note to Judge Stewart, stating:

> We feel the defense was not adequate, that Mr. Evans was not competent to represent himself, and that he had a difficult time communicating his point of view. Should that play a significant part in the basis of our decision?

Judge Stewart replied, "No." The jury then returned a verdict finding Evans guilty as charged.

On appeal, Evans, now represented by counsel, argues that the record fails to establish that he knowingly and intelligently waived his right to counsel at trial. In determining the adequacy of Evans' waiver, we are guided by *James v. State*, 730 P.2d 811, *modified on rehearing*, 739 P.2d 1314 (Alaska App.1987). In *James*, addressing a claim similar to Evans', we discussed the type of showing that is necessary before the trial court may grant a defendant's request for self-representation:

> Under art. I, sec. 21 of the Alaska Constitution and the Sixth Amendment to the United States Constitution, a criminal defendant has the right to represent himself. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2535, 45 L.Ed.2d 562 (1975); *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974). However, courts have imposed protective restrictions on the exercise of that right because it involves a waiver of the fundamental right to counsel. A defendant must knowingly and intelligently give up the benefits of the right to counsel before being allowed to represent himself. *Faretta [v. California,]* 422 U.S. [806] at 835, 95 S.Ct. [2525] at 2541 [45 L.Ed.2d 562 (1975) ]. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation...." *Id.*

> The Alaska Supreme Court requires that the trial court first establish that the defendant can represent himself in a "rational and coherent manner" and then determine whether "the prisoner understands precisely what he is giving up by declining the assistance of counsel," before allowing the defendant to appear *pro se*. *McCracken*, 518 P.2d at 91. The trial judge must explain the advantages of legal representation in "some detail." *Id..* at 92. The record must reflect a clear waiver of the right to counsel. *O'Dell v. Anchorage*, 576 P.2d 104, 108 (Alaska 1978); *Smith v. State*, 651 P.2d 1191, 1194 (Alaska App.1982).

> In addition, Alaska Rule of Criminal Procedure 39(b)(3) requires the court to appoint an attorney for an indigent defendant unless the defendant both proves that he understands the benefits of hav-

**1374** 

ing an attorney and knowingly waives that right. This rule places an affirmative duty on the trial judge to determine, on the record, whether a defendant understands the benefits of legal counsel. *Gregory v. State*, 550 P.2d 374, 379 (Alaska 1976).

*Id.*, 730 P.2d at 813–14.

We further noted in *James* the high level of scrutiny required on the issue of self-representation by section 6–3.6 of the ABA Standards for Criminal Justice,[1] quoting with approval the official commentary to that standard:

> Except in the most unusual circumstances, a trial in which one side is unrepresented by counsel is a farcical effort to ascertain guilt. Thus, once a defendant has clearly and unequivocally declared his or her intention to appear pro se, the trial judge must conduct a thorough inquiry into the circumstances surrounding the assertion.... This inquiry should be incorporated into the trial record ... and should include: advising the defendant of the right to counsel and the importance of having counsel; warning the defendant of the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'"; and inquiring into the defendant's educational background, previous experience with crimi-

nal trials, and general competence.... [T]he defendant must possess the mental competence to understand the dangers and ramifications of self-representation. [Footnotes omitted.]

*James*, 730 P.2d at 814 n. 1 (quoting I ABA Standards for Criminal Justice § 3–3.6 commentary at 6.39–40 (2d ed. 1982)).

 In the present case, the superior court's on-record inquiry of Evans failed to comply with the minimal requirements set forth in *James*. Although Judge Hanson addressed at some length the issue of Evans' competency to waive counsel and proceed *pro se*, he did not attempt to describe the benefits of counsel or confirm that Evans' willingness to proceed without Beiswenger's assistance was based on an informed view of what Beiswenger could do to help Evans.[2] Nor did the judge attempt to explain, or inquire into Evans' understanding of, the dangers and disadvantages of self-representation.[3]

 The inadequacy of the on-record inquiry in this case is not necessarily dispositive. We have recognized that, in some exceptional cases, it may be possible to infer a knowing and intelligent waiver of the right to counsel circumstantially. *See, e.g., Kelly v. State*, 663 P.2d 967, 969 (Alaska App.1983). Thus, the superior court's decision to allow Evans to assert his right of self-representation would not be suscep-

---

**1.** Standard 6–3.6 reads, in relevant part:

The defendant's election to represent himself or herself at trial

(a) A defendant should be permitted at the defendant's election to proceed in the trial of his or her case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

(i) has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when the defendant is so entitled;

(ii) possesses the intelligence and capacity to appreciate the consequences of this decision; and

(iii) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.

I ABA Standards for Criminal Justice § 6–3.6 (2d ed. 1982).

**2.** In this regard, Beiswenger's conclusory assurance at the outset of the waiver hearing that he

had discussed with Evans what a lawyer could do for him and that Evans understood is not an adequate substitute for a detailed, on-record explanation of the benefits of counsel. Nor could such an assurance replace the need for an affirmative inquiry by the court as to whether Evans actually understood the benefits of counsel and was willing to relinquish those benefits.

**3.** At the conclusion of the waiver hearing, after accepting Evans' waiver of counsel, Judge Hanson did make clear his opinion that Evans was acting foolishly, and the judge encouraged Evans to consult with Beiswenger, who was to remain available on a standby basis. Again, however, this advice and encouragement is not a suitable substitute for a thorough explanation of the disadvantages of self-representation and an on-record inquiry into Evans' understanding of those dangers, and of his willingness to assume the risk of representing himself.

tible to challenge if the record as a whole unequivocally demonstrated a full awareness by Evans of the benefits of counsel and the dangers of self-representation. *Id.; James v. State*, 739 P.2d at 1316.

*James v. State* again presents a useful point of reference. In that case, we initially found the on-record inquiry conducted by the trial court insufficient to establish a knowing and intelligent waiver of counsel. We reversed on that basis, despite strong evidence that James had had extensive experience with counsel in prior cases. On rehearing, however, the state supplemented the appellate record to include a transcript of James' arraignment hearing, at which the magistrate fully explained the functions of an attorney. The transcript of the arraignment hearing revealed that, after assuring the magistrate that he understood this explanation, James demanded to represent himself, insisting that self-representation was his right and repeatedly refusing the court's attempts to convince James to consult with a court-appointed attorney before deciding whether to waive counsel.

After considering the supplemental transcript of the arraignment, we concluded that, despite the inadequacy of the court's inquiry at James' subsequent waiver hearing, the record as a whole demonstrated a knowing and intelligent waiver of the right to counsel and an informed decision to embark on self-representation. *Id.* at 1316.

■ The record in the present case is not comparable to that in *James*. In contrast to *James*, the record in the present case contains no convincing indication that Evans has had extensive experience dealing with attorneys in the criminal justice system or that he has otherwise independently gained an understanding and appreciation of the benefits of counsel and the dangers of self-representation. Apart from Beiswenger's conclusory representation that he had told Evans what an attorney can do, we know only that Evans was convicted of murder eleven years before the present case and that, though represented by counsel, he did not participate in his own de-

fense. Thereafter, Evans evidently made limited efforts to work on an appellate brief in his own case, but did not succeed in filing anything.

Moreover, unlike James, Evans did not affirmatively insist on his right to self-representation; nor did he unequivocally reject all representation or refuse to consult with an independent attorney concerning his decision to proceed *pro se*. To the contrary, Evans' willingness to waive his right to counsel was far more equivocal. Evans made it clear that he did not want to give up his right to counsel altogether but was only dissatisfied with Beiswenger, having been discouraged by Beiswenger's advice to plead guilty.

If anything, Evans' reasons for proceeding without his attorney called for a heightened level of inquiry:

> [C]ourts generally agree that there is special need for an extensive explanation of the pitfalls of self-representation where the defendant states that he has some doubts about proceeding pro se, but will do so because the court will not replace appointed counsel or grant a continuance permitting him to retain new counsel. While it may be that the defendant is simply playing a "cat and mouse game with the court," it also is possible that a better understanding of the pitfalls of proceeding pro se may lead him to choose the option of continuing with his current counsel.

2 W.R. LaFave & J.H. Israel, *Criminal Procedure* § 11.5(c), at 47 (1984). Considering the record as a whole, we find no independent evidence to serve as a substitute for the requisite on-record inquiry concerning the voluntariness of Evans' waiver.

Before accepting Evans' waiver of counsel and his election to proceed *pro se*, it was incumbent on the superior court to inquire into more than just his intelligence, background and general competency to present his case. The court was additionally obligated to advise Evans of "the right to counsel and the importance of having counsel,"[4] in order to ensure that Evans

---

**4.** I ABA Standards for Criminal Justice, § 3–3.6, commentary at 6.40 (2d ed. 1982).

understood "precisely what he [was] giving up by declining the assistance of counsel." [5] Beyond that, the court was required to make Evans "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" [6] Here, as we have already indicated, the record fails to disclose any advice concerning the right to counsel or the importance of having counsel, or any inquiry into Evans' understanding of these matters. The record also fails to disclose advice concerning or inquiry into the dangers of self-representation.

Because the record does not affirmatively demonstrate a knowing, intelligent, and voluntary waiver of the right to counsel, the conviction is REVERSED.

---

**5.** *McCracken v. State,* 518 P.2d 85, 91 (Alaska 1974). Ensuring that the accused understands the importance of counsel comprehends more than an abstract explanation of the function of counsel. As the Supreme Court made clear in *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), an informed decision to waive counsel requires a broader inquiry into the accused's understanding of the charges and the significance of those charges:

> "[The trial court's] protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver ..., a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.... To be valid such waiver [of counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances[.]

*See generally* 2 W.R. LaFave & J.H. Israel, *Criminal Procedure* § 11.3 (1984). *See also United States v. McDowell,* 814 F.2d 245, 251–52 (6th

Cir.1987) (appendix setting out model interrogatory from *Bench Book for United States District Judges*).

**6.** *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). In connection with this requirement, Professor LaFave states:

> [T]he trial court should take special care to advise the defendant as to the pitfalls of self-representation. Appellate opinions have suggested that the defendant should be informed at least as to the following matters: (1) that "presenting a defense is not a simple matter of telling one's story," but requires adherence to various "technical rules" governing the conduct of trial; (2) that a lawyer has substantial experience and training in trial procedure and that the prosecution will be represented by an experienced attorney; (3) that a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences; (4) that a defendant proceeding pro se will not be allowed to complain on appeal about the competency of his representation; and (5) "that the effectiveness of his defense may well be diminished by his dual role as attorney and accused."

2 W.R. LaFave and J.H. Israel, *Criminal Procedure* § 11.5(c), at 45 (1984) (footnotes omitted).