Sean Michael McINTIRE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7719.

Court of Appeals of Alaska.

Feb. 15, 2002.

---

**51.** *Id.* at 689.

**52.** *Id.* at 690.

Eugene Cyrus, Law Office of Eugene Cyrus, Eagle River, for Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

1. AS 11.71.040(a)(3)(F).

## OPINION

COATS, Chief Judge.

*Introduction*

In 1996, Sean Michael McIntire was convicted of misconduct involving a controlled substance in the fourth degree.[1] McIntire appealed, alleging several errors. This court remanded the case back to Superior Court Judge Beverly W. Cutler to determine whether McIntire waived his right to counsel.[2] On remand, Judge Cutler made additional findings and concluded that McIntire knowingly and intelligently waived his right to counsel. McIntire appeals. We conclude that the record does not establish that McIntire knowingly and intelligently waived his right to counsel. Accordingly, we reverse his conviction.

*Facts and Proceedings*

In 1995, while on probation, McIntire's probation officer conducted a search of his residence. The search resulted in the discovery of a marijuana grow operation, and McIntire was charged with misconduct involving a controlled substance in the fourth degree. McIntire retained an attorney, Eric Jensen. Jensen filed several motions, including a motion to suppress the evidence seized from the residence and to dismiss the charges because the search was unreasonable. Jensen then, with McIntire's consent, asked the court for permission to withdraw. Jensen told Judge Cutler that he and McIntire disagreed about how to conduct McIntire's defense. Judge Cutler advised McIntire against representing himself, telling him that although she understood not wanting to spend a lot of money on a lawyer, it would make more sense to have a lawyer.

Before Judge Cutler accepted McIntire's waiver, she gave him two cautions: (1) that McIntire was free to proceed on his own, but she would not allow McIntire to delay the trial if he later decided he wanted to be represented by a lawyer; the new lawyer would have to step into trial without causing any delay and (2) that a lawyer would be taken more "seriously" than a person repre-

2. *McIntire v. State,* Memorandum Opinion and Judgment No. 4131 (Alaska App. October 13, 1999).

senting himself because a lawyer can get things done faster and lawyers are treated differently than lay persons.

McIntire initially asked for more time before deciding whether to proceed on his own but quickly changed his mind. Once Judge Cutler accepted his waiver, she concluded that "[McIntire had] been carefully question[ed]," had spoken for himself, understood the "basic rules" of trial, and was knowingly and intelligently waiving his right to counsel.

McIntire proceeded pro se and went to trial. McIntire had assistance from paralegal Rhonda Marcy throughout the pre-trial and trial process. A second paralegal (or investigator), Don Lewis Hart, also helped McIntire during trial. Marcy sat at counsel table during trial, and Hart sat in the gallery immediately behind counsel table.

McIntire was convicted following a jury trial. McIntire appealed,[3] arguing that he had not knowingly or intelligently waived his right to counsel as mandated by *McCracken v. State*.[4] This court agreed that Judge Cutler's initial inquiry did not satisfy *McCracken*, but remanded the issue back to Judge Cutler for further proceedings to determine whether the record as a whole demonstrated McIntire knowingly and intelligently waived his right to counsel.[5]

At the remand hearing, the state attempted to call two witnesses, Marcy and Hart, to show that McIntire received the benefit of two non-lawyers at trial, both of whom had extensive legal experience. The state contended that this assistance combined with McIntire's past experience with the criminal justice system was sufficient to show that McIntire had knowingly and intelligently waived his right to counsel. Both Hart and Marcy resisted testifying, and ultimately, Judge Cutler quashed their subpoenas.

Judge Cutler then made her findings, concluding that McIntire had knowingly and intelligently waived his right to counsel.

### Discussion

Under the United States and Alaska Constitutions, a criminal defendant has the fundamental right to represent himself.[6] Yet whenever a defendant waives his right to counsel, he gives up an equally important fundamental right—the right to counsel. He must knowingly and intelligently give up the benefits of counsel before being allowed to represent himself.[7] The Alaska Supreme Court requires that, before allowing a defendant to waive counsel, the trial judge must explain the advantages of legal representation in "some detail."[8] The trial judge must determine that the defendant understands the benefits of legal counsel and the dangers and disadvantages of self-representation.[9]

In *James v. State*,[10] we discussed the high level of scrutiny that a trial court must exercise when a defendant insists on self-representation. We relied on the Commentary to the ABA Standards for Criminal Justice in setting out the duties of a trial judge to determine whether a defendant fully understands the magnitude of the rights that he or she is waiving:

> Except in the most unusual circumstances, a trial in which one side is unrepresented by counsel is a farcical effort to ascertain guilt. Thus, once a defendant has clearly and unequivocally declared his or her intention to appear pro se, the trial judge must conduct a thorough inquiry into the circumstances surrounding the assertion. . . . This inquiry should be incorporated into the trial record . . . and should include: advising the defendant of the right to counsel and the importance of having counsel; warning the defendant of

---

3. *McIntire,* Memorandum Opinion & Judgment No. 4131, p. 6.

4. 518 P.2d 85, 91–92 (Alaska 1974).

5. *McIntire,* Memorandum Opinion & Judgment No. 4131, p. 6–8.

6. *See Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *McCracken,* 518 P.2d at 91.

7. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2540.

8. *McCracken,* 518 P.2d at 92.

9. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2540; *Gregory v. State,* 550 P.2d 374, 379 (Alaska 1976).

10. 730 P.2d 811 (*James I*), modified on reh'g, 739 P.2d 1314 (Alaska App.1987) (*James II*).

the "dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' "; and inquiring into the defendant's educational background, previous experience with criminal trials, and general competence.... [T]he defendant must possess the mental competence to understand the dangers and ramifications of self-representation.[11]

■ A review of Alaska cases establishes that this court independently reviews the record to determine whether the defendant knowingly and intelligently waived counsel; we will not defer to the trial court.[12] We have previously stated that "[t]he best way to establish ... [a waiver of counsel] is for the trial court to conduct a thorough inquiry of a defendant, along the lines suggested in the Commentary to the ABA Standards for Criminal Justice."[13] But we also concluded that "in some cases it is possible to ascertain that the defendant made a knowing and intelligent waiver of counsel from the record as a whole."[14]

In *Kelly v. State*,[15] we concluded that, although the trial court did not conduct an adequate inquiry to determine whether Kelly waived counsel, the record as a whole established Kelly made a knowing and intelligent waiver.[16] We found this waiver after considering Kelly's extensive legal experience and expertise and the fact that Kelly, although in charge of his own defense, had the benefit of an experienced attorney who played a significant role in Kelly's defense.[17]

But *Kelly* stands alone as the only case where we have found that the record supported waiver in the absence of a thorough inquiry by the trial court. This is illustrated in *James v. State*.[18] In the original *James* case, we concluded that the record did not show that the trial court had established that James understood what he was giving up when he elected to proceed without counsel.[19] But the state argued that James had considerable prior contact with the criminal justice system and therefore we should conclude, as we did in *Kelly,* that James had knowingly and intelligently waived his right to counsel.[20] The majority of this court concluded that the record did not establish that James had the legal sophistication that Kelly had and concluded that the record was not sufficient for us to find that he knowingly and intelligently waived his right to counsel.[21]

After we issued our decision, the state petitioned for rehearing.[22] The state asked to supplement the appellate record with a transcript of James's initial arraignment in district court.[23] We granted the state's motion to supplement the record and allowed the parties to file supplemental briefs. The record of James's initial arraignment showed that the magistrate had thoroughly informed James of the functions of an attorney and that James had adamantly refused to allow the court to appoint an attorney for him, insisting that it was his right to defend himself.[24] Based upon the record as supplemented, we concluded that the record showed that James knowingly and intelligently waived his right to counsel following a thorough inquiry by the magistrate.[25]

11. *James I,* 730 P.2d at 814 n. 1 (quoting 1 ABA Standard for Criminal Justice § 6–3.6 commentary at 6.39–40 (2d ed.1982 supp.)) (footnotes omitted and alterations made in *James I* ).

12. See *James II,* 739 P.2d at 1316; *see also Evans v. State,* 822 P.2d 1370, 1374 (Alaska App.1991).

13. *James II,* 739 P.2d at 1316.

14. *Id.*

15. 663 P.2d 967 (Alaska App.1983).

16. *Id.* at 970.

17. *Id.*

18. *James I,* 730 P.2d 811.

19. *Id.* at 814.

20. *Id.*

21. *Id.* at 814–15.

22. *James II,* 739 P.2d at 1315.

23. *Id.*

24. *Id.*

25. *Id.* at 1316.

■ In McIntire's case, the state asks us to find that, even though the trial court did not make an adequate inquiry to establish that McIntire knowingly and intelligently waived his right to counsel, the record as a whole establishes that he did. The state points out that McIntire had previously pled no contest to a felony charge with the advice of counsel and had previously been convicted of seven misdemeanors. He had also been convicted of eight traffic offenses in the previous eight years. The state points out that during several of these prior contacts with the court system, McIntire viewed the court system video tape, which explains the functions and benefits of counsel in some detail. The state also points out that McIntire had the assistance of two paralegals during his trial and argues that McIntire's abilities at trial showed considerable legal sophistication.

We agree that this is a close case. That is why we initially remanded the case back to the trial court to give the state the opportunity to establish that the record showed that McIntire had waived his right to counsel. But the evidence on the record supporting the conclusion that McIntire knowingly and intelligently waived his right to counsel is certainly not as strong as the record in *Kelly*. Kelly's legal sophistication was obvious.[26] Kelly also received active and substantial assistance from an experienced criminal defense attorney.[27] McIntire's case appears to be more like *James*. James was facing his fourth felony conviction, had previously pleaded guilty to a similar felony charge with the advice of counsel, and previously had been convicted following a jury trial.[28] In spite of James's extensive prior criminal history and experience with lawyers, the majority of this court concluded that his experience was not sufficient to support the conclusion that he had sufficient information to waive counsel.[29] It was only after the record was supplemented to show that James had been

specifically informed of the benefits of counsel and the dangers of self-representation and that he had insisted in representing himself that we affirmed James's conviction.[30] As Chief Judge Bryner pointed out in his concurring opinion in the original *James* case, it is dangerous to assume that, because a defendant has been represented by attorneys in the past, he is able to understand and appreciate the benefits of representation.[31]

Here, it is less clear that McIntire knowingly and intelligently gave up the benefits of counsel. The record shows that McIntire had considerable past exposure to the court system arraignment video. The record also shows that the video explains the right to counsel and the benefits of counsel. But the supreme court has cautioned against relying on a general explanation of the right to counsel to determine that there has been a knowing and intelligent waiver.[32] In *James*, it was reasonable to infer that because of his prior experience in the criminal justice system, he had been informed of the benefits of counsel on numerous occasions. But the deciding factor in *James*, besides his extensive prior exposure to the court system, was the fact that the magistrate specifically addressed him concerning his right to counsel in the particular case and that he had clearly waived his right to counsel and emphatically invoked his right to represent himself. McIntire's case presents no similar waiver on the record.

Although McIntire had considerable contact with the criminal justice system, the present offense was his first trial by judge or jury. All of McIntire's prior offenses were resolved through guilty pleas.

■ The state points out that McIntire had the assistance of two paralegals and argues that the record shows that McIntire did a credible job of defending himself. However, it is difficult to tell the quality of

26. *Kelly*, 663 P.2d at 969.

27. *Id.* at 970.

28. *James I*, 730 P.2d at 819 (Singleton, J. dissenting).

29. *Id.* at 815.

30. *James II*, 739 P.2d at 1316.

31. *James I*, 730 P.2d at 815 (Bryner, C.J., concurring).

32. *O'Dell v. Anchorage*, 576 P.2d 104, 108 (Alaska 1978).

McIntire's representation from the record. That is why, in cases where a defendant claims that his attorney rendered ineffective assistance of counsel, we refuse to decide those cases without supplementing the record with trial counsel's testimony.[33] Certainly in the past we have drawn conclusions about a defendant's ability to waive counsel from the trial record,[34] particularly when the record shows that the defendant was ill-equipped to represent himself. But it is difficult to tell the nature or quality of a defendant's representation strictly based on the trial record alone.

### Conclusion

Because a full inquiry was not made and the record as a whole does not clearly demonstrate that McIntire knowingly and intelligently waived his right to counsel, we REVERSE McIntire's conviction.

MANNHEIMER, Judge, concurring.

I agree with the result reached by the majority, but I write separately to clarify my analysis of this case.

Alaska law requires that the record affirmatively demonstrate a defendant's knowing waiver of counsel. Thus, the precise question in McIntire's case is not whether McIntire subjectively understood the benefits of counsel and knowingly waived them, but instead whether the record objectively demonstrates this. It does not.

The record suggests that McIntire discharged his attorney in a dispute over money and litigation tactics: McIntire apparently wanted to pursue a defense on several fronts that his attorney did not believe to be warranted, and McIntire's attorney warned him that such a defense would cost a considerable amount of money. Instead of inquiring whether attorney and client could resolve their differences, Judge Cutler granted the attorney's motion to withdraw after a short colloquy with McIntire. The judge did not require McIntire to affirmatively declare that he understood the benefits of counsel and was willing to proceed without an attorney. Moreover, even though money appeared to be an issue, the judge did not ask McIntire whether he wished to apply for counsel at public expense.

I note that we remanded this case to allow the State to develop a record that might support a finding of knowing waiver. Potentially, the State could have examined McIntire's attorney or McIntire, or both, about the conversations leading up to the attorney's motion to withdraw and McIntire's announcement that he wished to represent himself. However, the State chose not to seek this testimony.

For these reasons, I agree with my colleagues that this record does not adequately demonstrate a proper waiver of the right to counsel.

I also wish to address one other aspect of the majority's decision. In the majority's description of Judge Cutler's colloquy with McIntire, the majority notes that Judge Cutler told McIntire that lawyers are taken more seriously than *pro se* litigants and that courts treat lawyers differently from non-lawyers. It appears that Judge Cutler's motive for saying this was benign—*i.e.*, she was trying to dissuade McIntire from giving up his right to counsel. Nevertheless, I wish to clarify that this court does not approve of such comments, nor would this court tolerate a trial judge's giving preference to a litigant because they were represented by a lawyer.

---

**33.** *See State v. Jones,* 759 P.2d 558, 570 (Alaska App.1988) (holding a defendant must either supply an affidavit from his former attorney or show why the attorney will not supply an affidavit).

**34.** *James II,* 739 P.2d at 1316; *Kelly,* 663 P.2d at 970.